1 | Randall J. Sunshine (SBN 137363)
     rsunshine@linerlaw.com
2 | Angela C. Agrusa (SBN 131337)
     aagrusa@linerlaw.com
3 | David B. Farkas (SBN 257137)
     dfarkas@linerlaw.com
4 | LINER GRODE STEIN YANKELEVITZ
   | SUNSHINE REGENSTREIF & TAYLOR LLP
5 | 1100 Glendon Avenue, 14th Floor
   | Los Angeles, California 90024.3503
6 | Telephone:   (310) 500-3500
   | Facsimile:    (310) 500-3501
7 |
8 | Attorneys for Defendant OMNI HOTELS
   | MANAGEMENT CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| STEVEN ADES and HART WOOLERY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>OMNI HOTELS MANAGEMENT CORPORATION and DOES 1 through 100, inclusive,<br><br>        Defendant. | Case No. 2:13-cv-02468-CAS-MANx<br><br>Honorable Christina A. Snyder<br><br>**DEFENDANT OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, STRIKE CLASS ALLEGATIONS**<br><br>Date:    June 24, 2013<br>Time:   10:00 a.m.<br>Crtrm.: 5 |

37535.001-1022181v3.8 1:40 PM

Case No. 2:13-cv-02468-CAS-MANx

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................1

II.     BOTH OF PLAINTIFFS' CLAIMS FALL WITHIN THE PUBLIC
        UTILITY EXEMPTION ........................................................4

        A.      Omni Hotels' Alleged Conduct Falls Squarely Within The
                Literal Terms Of The Public Utility Exemption, And Is
                Regulated By The PUC ...............................................4

        B.      Having Misconstrued Omni Hotels' Argument, Plaintiffs Rely
                On Inapposite Legal Authority ..................................7

        C.      Numerous and Repeated Statements By The Legislature Confirm
                The Intent to Leave Regulation Of Service-Observing To The
                PUC .................................................................9

III.    PLAINTIFFS FAIL TO ALLEGE A REASONABLE EXPECATION
        OF PRIVACY IN THEIR CALLS WITH OMNI HOTELS ....................12

IV.     OMNI HOTELS' MOTION TO STRIKE SHOULD BE GRANTED
        BECAUSE A CLASS CANNOT BE CERTIFIED IN THIS CASE ..........13

        A.      Individualized Issues Will Necessarily Predominate.................13

        B.      The Aggregated Statutory Damages Sought In This Case Run
                Afoul of the Superiority Requirement of Rule 23(b) and Violate
                Constitutional Due Process ....................................14

V.      CONCLUSION ..................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bateman v. American Multi-Cinema, Inc.*,
   632 F.3d 708 (9th Cir. 2010) .......................................................... 15, 16

*Faulkner v. ADT Security Servs.*,
   706 F. 3d 1017 (9th Cir.2013) ....................................................... 12, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................ 15

*Kline v. Coldwell, Banker & Co.*,
   508 F.2d 226 (9th Cir. 1974) ................................................... 14, 15, 16

*Montegna v. Yodle, Inc.*,
   12CV647 WQH NLS, 2012 WL 3069969 (S.D. Cal. July 27, 2012) ................. 3

*Nader v. Capital One Bank*
   (USA), N.A., C.D. Cal. CV 12-01265 (C.D. Cal. Oct. 12, 2012) ....................... 3

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997) ............................................................................ 10

*Sajfr v. BBG Commc'ns, Inc.*,
   10CV2341 AJB NLS, 2012 WL 398991 (S.D. Cal. Jan. 10, 2012) .................... 3

*Shin v. Digi-Key Corp.*,
   No. 2:12-cv-05415, 2012 WL 5503847 (C.D. Cal. Sept. 17, 2012) ................... 3

*Texas State Comm'n for the Blind v. U.S.*,
   796 F.2d 400 (Fed. Cir. 1986) .............................................................. 10

*Weiner v. ARS Nat. Services, Inc.*,
   12-CV-183-L BGS, 2012 WL 3632025 (S.D. Cal. July 5, 2012) ..................... 3

*Young v. Hilton Worldwide, Inc. et al.*,
   C.D. Cal. Case No. CV 12-1788 ............................................................... 3

**STATE CASES**

*Hale v. Morgan*,
   22 Cal.3d 388 (1978) ........................................................................... 15

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal.4th 95 (2006) ....................................................................... 6, 12

*Kight v. CashCall, Inc.*,
    200 Cal.App. 4th 1377 (2011) ..................................................... 12, 13

*Ribas v. Clark*,
    38 Cal.3d 355 (1985) .............................................................................. 6

*Starbucks v. Super. Ct.*,
    168 Cal. App. 4th 1436 (2008) ......................................................... 15

**STATE STATUTES**

Penal Code § 631 ................................................................................... 6, 11

Penal Code § 632 .................................................................................. passim

Penal Code § 632.7 ............................................................................. 1, 3, 6

**RULES**

Rule 23(b)(3) ............................................................................................. 16

**REGULATIONS**

General Order 107 ...................................................................................... 4

General Order 107-B ............................................................................. passim

37535.001-1022181v3.8 1:40 PM      iii      Case No. 2:13-cv-02468-CAS-MANx

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

## I.   __INTRODUCTION__

Plaintiffs' Opposition to Omni Hotels' motion to dismiss the First Amended Complaint ("FAC") mischaracterizes Omni Hotels' argument, and then proceeds to attack a straw-man, rather than contend with the legal authorities which are fatal to Plaintiffs' claims.

In its motion, Omni Hotels demonstrated that Plaintiffs' entire FAC fails because it is based on business-monitoring which falls squarely within the public utility exemption of the California Invasion of Privacy Act ("CIPA").[1]

The plain language of Penal Code sections 632 and 632.7, upon which Plaintiffs' two claims are based, exempts conduct done "pursuant to the tariffs of a public utility." The California Public Utility Commission ("PUC") currently regulates all business call monitoring—regardless of the monitoring equipment's origin—through public utility tariffs. Thus, all such monitoring is done "pursuant to the tariffs of a public utility," and is exempted from CIPA.  The PUC and the Legislature are clear that the PUC's governance of business call monitoring extends not only to issuance of the tariffs, but also their enforcement and penalties for non-compliance thereto.

Rather than address Omni Hotels' argument directly, Plaintiffs simply claim that Omni Hotels never made the argument at all:

- "Omni does not contend its conduct falls within the literal language of section 632(e)(2)."  (Opp'n at 5:7-8.)

- "Omni does not argue, and has not presented any evidence, that it utilizes equipment that is furnished and used pursuant to a tariff of a public utility." (Opp'n at 8:14-16.)

---

[1] Penal Code Section 632(e)(2) states: ("this section does not apply to . . . "the use of any to the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility") (the "Public Utility Exemption").A near-identical exemption is found at section 632.7(b)(2).

1
OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

In fact, Omni Hotels demonstrated in its motion that *all* service-observing is *currently* regulated by the PUC through its General Order 107-B ("GO 107-B"), which explicitly states that *all* telecommunication companies are currently required to file tariffs regulating the use of service-observing equipment, including recording equipment obtained by their subscribers.[2]  Curiously, despite being the focal point of Omni Hotels' motion, Plaintiffs ignore GO 107-B almost entirely.

Having conveniently ignored Omni Hotels' main argument that its alleged conduct falls within the ***literal*** terms of the Public Utility Exemption, Plaintiffs next argue that the Court should ignore CIPA's legislative history, which overwhelmingly shows that by enacting CIPA, the Legislature intended to leave the regulation of business monitoring activity to the PUC and expressed no intention to criminalize such activity.[3]  While Plaintiffs may wish to construe CIPA differently than the legislative intent, CIPA's language demands that the Court consider its legislative history.

---

[2] From the Introduction section of Omni Hotels' motion at page 2: "This exemption applies in this case, as the California Public Utilities Commission ("PUC") currently regulates all service-observing through a General Order that sets forth tariff requirements for telephone companies."

[3] "Makes the wiretapping and eavesdropping penalties inapplicable to telephone devices regulated and licensed by the P.U.C. ***This will insure [sic] that justifiable and regulated use of devices for overhearing employees business conversations may continue unimpeded this practice is known as service observing***." (RJN, Exh. 9.)  "As author of this measure it is not my intention to interfere in any way with the jurisdiction of the California Public Utilities Commission over the use of telephone monitoring and recording equipment by communications public utilities ***or their subscribers***. . . . ***It is my intention that this measure should not be construed as expressing a legislative intent to either approve or disapprove such use of telephone monitoring or recording equipment***." (*Id.*, Exh. 10.)

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

1    Separately, Omni's Motion shows that Plaintiffs failed to allege facts in the

2  FAC to satisfy the confidentiality requirement of sections 632 and 632.7.  Plaintiffs

3  disregard this failure, arguing that they do not need to meet any such requirement

4  because CIPA's confidentiality requirement is met whenever a call recording

5  disclaimer is not given.  This is not true.  Numerous courts have held that plaintiffs

6  must plead facts sufficient to demonstrate an objectively reasonable expectation of

7  privacy.[4] In fact, the California Court of Appeal has affirmed that numerous factors

8  determine whether a communication is confidential so as to fall within CIPA, even

9  where no disclaimer was given.

10    Finally, Omni Hotels' Motion to Strike should also be granted, because this

11  action cannot be maintained on a class basis.  Given the requirement that each caller

12  demonstrate that he or she had a reasonable expectation of privacy in purportedly

13  calling Omni Hotels, it is evident from the pleadings that individualized issues will

14  predominate in this case. Additionally, courts condemn the practice of aggregating

15  statutory damages through class suit to arrive at "absurd" damages calculations that

16  bear no relation to any actual harm.  The prospect of astronomical aggregated

17  statutory damages runs afoul of the superiority requirement for maintaining a class

18  action and violates due process.

19    For the reasons set forth in the Motion and in this Reply, Omni Hotels

20  respectfully requests that the Court dismiss Plaintiffs' FAC with prejudice.

21  //

22

23  [4] *See, e.g.*, *Young v. Hilton Worldwide, Inc. et al.*, C.D. Cal. Case No. CV 12-1788

24  R (PJWx); *Sajfr v. BBG Commc'ns, Inc.*, 10CV2341 AJB NLS, 2012 WL 398991
   (S.D. Cal. Jan. 10, 2012); *Shin v. Digi-Key Corp.*, No. 2:12-cv-05415, 2012 WL

25  5503847 at *3-4 (C.D. Cal. Sept. 17, 2012); *Nader v. Capital One Bank* (USA),

26  N.A., C.D. Cal. CV 12-01265 (C.D. Cal. Oct. 12, 2012); *Weiner v. ARS Nat.
   Services, Inc.*, 12-CV-183-L BGS, 2012 WL 3632025 (S.D. Cal. July 5, 2012);

27  *Montegna v. Yodle, Inc.*, 12CV647 WQH NLS, 2012 WL 3069969 (S.D. Cal. July

28  27, 2012).

II.     **BOTH OF PLAINTIFFS' CLAIMS FALL WITHIN THE PUBLIC UTILITY EXEMPTION.**

    A.     **Omni Hotels' Alleged Conduct Falls Squarely Within The Literal Terms Of The Public Utility Exemption, And Is Regulated By The PUC.**

As explained in the Motion, when CIPA was enacted in 1967, businesses that wished to monitor employee calls with customers could only obtain service-observing equipment (i.e. recording equipment) from the monopolized public utility (i.e., AT&T or its west-coast incarnation, the Pacific Telegraph & Telephone Company, or PT&T). The use of such equipment was regulated by the PUC pursuant to the original General Order 107, which provided for certain conditions and regulations. Those conditions were laid out in tariff sheets (i.e. lists of terms, rates, regulations) that the PUC mandated that the utility file.

Recognizing that the PUC already regulated such service-observing through its original General Order 107, the Public Utility Exemption was included in CIPA to permit the use of "any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility." That Exemption ensured that all business call monitoring would continue as regulated by the PUC.

In 1983, the PUC began a rule-making procedure, stating that it did so "because our present orders dealing with telephone privacy did not anticipate legal and other changes which would result in a competitive market in telecommunications terminal equipment rather than monopoly control by telephone utilities." 11 CPUC2d 692 (RJN Exh. 3.) That rulemaking procedure led to the adoption of GO 107-B, which, in turn, mandated that all utility companies adopt tariffs governing the use of customer-owned recording equipment. Specifically, GO 107-B provides:

//

//

"B.  In order to ensure the same degree of privacy for telephone conversations conducted over the California lines of telephone utilities interconnected with *terminal equipment provided by customers of telephone utilities*, *each telephone utility shall file, and maintain on file, with this Commission a tariff which provides as conditions for use of this network . . .*"

11 CPUC2d 692 at 705 (RJN, Exh. 3.)

The GO 107-B then goes on to provide that the tariffs contain conditions for using the network, a customer "*which provides its own terminal equipment and which monitors or records conversations between its employees and its customers, and others engaging in conversations with its employees*," must notify the utility in writing of the recording/monitoring and must give notice through specified methods. *Id*.  Thus, through GO 107-B, the PUC acted to continue to regulate business monitoring.  Presently, such business monitoring is regulated by "the tariffs of a public utility" and therefore falls squarely within the literal terms of the Public Utility Exemption.

Despite being extensively discussed in Omni Hotels' Motion, Plaintiffs choose to ignore this argument.  The only mention of GO 107-B in Plaintiffs' Opposition comes at footnote 4 on page 8, where Plaintiffs state that they have alleged that Omni Hotels has not complied with the conditions set for the GO 107-B for monitoring customer calls.  But as stated in the Motion, the exclusive remedy for non-compliance with the GO 107-B's conditions is disconnection of service by the utility.  *Id*. at 698-99.  To the extent a consumer believes that a business has not complied with tariff requirements set forth by the PUC, he or she may notify the telephone utility and, if necessary, bring a complaint against the utility.  The utility will notify the offending subscriber and, if the noncompliance is not corrected within five days, will discontinue the subscriber's service.  *Id*. at 703, II.B.2-3.  If the utility fails to follow this procedure, the PUC will order it to do so.  *Id*. at 699; *see also San Mateo Union High School District v. P.T.&T. Co.*, 72 CPUC 776, *7 (1971).  The PUC has confirmed that the foregoing "disconnection" procedure is the

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

exclusive remedy for the service-observing conduct alleged in the Complaint: "*It is pointed out that while telephone service may be disconnected by a utility, monitoring is lawful, unlike wiretapping and certain classifications of conduct covered by Penal Code §§ 630 et seq.*"    11 CPUC2d 692 at 698-99.

Plaintiffs cite to *Ribas v. Clark*, 38 Cal.3d 355, 358 (1985) to support their argument that no tariff applies in this case.  But *Ribas* is entirely inapposite.  In *Ribas*, the plaintiff (Ribas) was a husband going through acrimonious marital dissolution proceedings.  38 Cal.3d 355, 358 (1985).  At an arbitration to set aside the dissolution based on fraud, third-party Clark testified about a conversation between Ribas and his former wife; Clark had eavesdropped on that conversation using ail extension telephone.  *Id.*  Ribas sued Clark under Penal Code section 631, a wiretapping provision of CIPA that contains a public utility exemption like that in sections 632 and 632.7.  One of Clark's unsuccessful defenses was to claim her conduct fell within this exemption "because her telephone extension was provided, installed, and serviced by the telephone company."  *Id.* at 362.  The Court rejected Clark's argument because "there indeed was no tariff of the . . . telephone utility placing any restriction on the use of extension telephones for monitoring conversations at the time of the conduct alleged here."  *Id.* at 362-63.  Before making short shrift of Clark's defense, the Court cursorily acknowledged that section 631 exempts the use of equipment furnished and used pursuant to the tariffs of a public utility.  *Id.* at 362.[5]

---

[5] Plaintiffs also cite to *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (2006), claiming that the Public Utility Exemption is contradicted by the holding therein. But In *Kearney*, the California Supreme Court performed a choice-of-law analysis to determine whether CIPA applied to calls between California residents and a Georgia business. *Id.* at 103.  *Kearney* contains no analysis whatsever regarding the Public Utility Exemption.  It also contains no analysis regarding whether the calls at issue in that case constituted "confidential communications" or occurred in circumstances giving rise to a reasonable expectation that the calls would not be recorded. Rather,

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

1    By contrast here, GO 107-B provides that *each telephone utility shall file,*
2 *and maintain on file, with this Commission a tariff which provides as conditions*
3 *for use of this network . . .*" to regulate any company "*which provides its own*
4 *terminal equipment and which monitors or records conversations between its*
5 *employees and its customers, and others engaging in conversations with its*
6 *employees.*" 11 CPUC2d 692 at 705 (RJN, Exh. 3.)

7    Because every utility company is *required* to file a tariff governing
8 customers' use of their own recording equipment to "monitor or record[]
9 conversations between [their] employees and its customers," and CIPA explicitly
10 exempts from liability the use of "any instrument, equipment, facility, or service
11 furnished and used pursuant to the tariffs of a public utility," the alleged conduct in
12 this case is completely exempted by the *literal* terms of the Public Utility Exemption
13 and all of Plaintiffs' claims must be dismissed.

14    **B.    Having Misconstrued Omni Hotels' Argument, Plaintiffs Rely On**
15         **Inapposite Legal Authority.**

16    As demonstrated above and in the Motion, GO 107-B requires *all telephone*
17 *utilities to file tariffs governing service-observing*, rendering CIPA inapplicable to
18 such activity under the literal terms of the statute.  Plaintiffs ignore this argument
19 entirely, and instead argue against the straw-man that Omni Hotels wants to read in
20 a tariff where none exists.

21 //

22

23 the Court stated that "we believe that the only substantial issue presented by the case
24 is the choice-of-law issue," considered whether CIPA was intended to apply only to
    calls that take place entirely within California, and held that it was not. The Court
25 went on to find a true conflict with Georgia law, and held that California law applied
26 to the calls at issue.  *Id.* at 128.  Indeed, the court in *Turner v. Western Dental*
    *Services, Inc.*, Los Angeles Superior Court Case No. BC478188 (RJN, Exh. 21)
27 explicitly distinguished *Kearney* in reaching its decision that service-observed calls
28 are exempted from CIPA.

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

1        In support of that argument, Plaintiffs cite to a few decisions where courts

2  have rejected a service-observing exception to CIPA.  However, in each of those

3  cases, the defendant corporations argued, and the courts proceeded upon the

4  assumption, that no tariffs existed and that the telecommunications industry has

5  been completely deregulated.  Indeed, in every single case dealing with the issue of

6  an exemption for service-observing activity, the parties and the courts proceeded on

7  the erroneous assumption that the federal deregulation of the telecommunications

8  industry also means that the PUC no longer requires filed tariffs.[6]  This is not the

9  case.

10        Each case assumed erroneously that the PUC does not currently regulate the

11  California telecommunications lines through public tariffs.  For example, in *Zamar*

12  *v. Mercury Insurance Company*, Los Angeles Superior Court Case No. BC469266

13  (April 17, 2013), the court stated (also quoted by Plaintiffs at Opp'n 7:18-21, 8:8-

14  11.), the court stated:

15        "Mercury argues subdivision (e)(2) entitles a company to listen to its

16        employees' phone conversations with customers, even if there is no
      tariff of a public utility to be found. That argument is not true to the

17        language of subdivision (e)(2). *The tariff exception requires a tariff.*
      *Mercury has no tariff to offer.* The statutory text alone decides this

18        question of statutory interpretation." (emphasis added.)

19

20        "If a public utility offers its customers any "instrument, equipment,
      facility, or service" to monitor telephone calls, and charges its

21        customers for the monitoring service "pursuant to the tariffs" on file

22        with the Public Utilities Commission, then the provisions of Penal
      Code section 632 do not apply." (Emphasis added.)

23

24  [6] The lone exception is *Turner*, where the defendants cited to GO 107-B to argue
that current regulation by the PUC through tariffs excludes application of CIPA.

25  (RJN, Exh. 21.)  Unfortunately, Judge Buckley's decision did not go into that level

26  of detail, despite finding that CIPA's legislative history evidenced a clear intent to
exclude service-observing and sustained the defendant's demurrer.  However, Omni

27  Hotels will provide the briefing in that case if the Court determines it would be
helpful, and will have copies for the Court at the hearing.

28

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

1    In other words, the *Mercury* court failed to acknowledge that GO 107-B
2 requires all telephone utilities to file tariffs regulating the use of customer-provided
3 recording equipment attached to telephone lines and used to record employee-
4 customer calls.  Its conclusion that the service-observing exception does not apply is
5 therefore completely inapposite.  *See also* Minute Order in *Newport v. BPG Home*
6 *Warranty Co.*, Los Angeles Superior Court Case No. BC488142 (May 8, 2013)
7 (recognizing that "when CIPA was adopted in 1967, the exception for regulated
8 devices was considered to generally exempt the 'practice known as service-
9 observing'" but erroneously concluding that customer-provided recording devices
10 are not currently regulated because the "Bell monopoly was broken up in 1984" and
11 "the Federal Communications Commission ended its requirement the telephone
12 companies file tariffs.")

13    Here, it is clear that there is, in fact, a tariff governing Omni Hotels' alleged
14 conduct.  Therefore the Public Utility Exemption applies.

15    C.    **Numerous and Repeated Statements By The Legislature Confirm**
16          **The Intent to Leave Regulation Of Service-Observing To The PUC.**

17    Plaintiffs desperately argue that the Court should turn a blind-eye to the
18 legislative history of the statute, which amply demonstrates that the Legislature
19 never intended to criminalize service-observing, and in fact recognized that service-
20 observing activity was properly regulated by the PUC.  Plaintiffs instead argue that
21 the legislative history of the statute should be disregarded because the statute itself
22 is unambiguous.  But this is incorrect, as the federal deregulation of the
23 telecommunications industry has rendered the applicability of "public utility tariffs"
24 unclear.  Indeed, it is illegal for the FCC to require public utilities to file tariffs.
25 Nevertheless, the PUC continues to properly require any utilities operating in
26 California (i.e. using California telephone lines) to file tariffs.
27 //
28 //

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

Plaintiffs' argument that CIPA is unambiguous is flawed.  To begin with, "[w]hether a statute is ambiguous is determined by looking at the language itself, *the specific context in which it is used, and the broader context of the entire statute.*  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

Furthermore, as the Federal Circuit recognized in *Texas State Comm'n for the Blind v. U.S.*, 796 F.2d 400, 406 (Fed. Cir. 1986):

> "[E]ven where a statute is clear on a purely linguistic level, interpretation may be necessary if that interpretation does not do justice to the realities of the situation.  As stated by the Supreme Court in *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892), it is a "familiar rule that a thing may be within the letter of the statute, but not within its spirit nor within the intention of its makers." *See also United States v. Riverside Bayview Homes, Inc.*, ---U.S. ----, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985) (argument that it is "unreasonable to classify 'lands,' wet or otherwise, as 'waters' " is "simplistic.")

Here, there is no question that at the time CIPA was enacted, the phrase "this section does not apply to . . . the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility" excluded service-observing from CIPA.  This is because such activity was exclusively regulated by the PUC (and, incidentally, by the FCC).  While the telecommunications industry has subsequently been deregulated at the federal level (including mandatory de-tariffing orders), it remains regulated in California by the PUC.  Thus, the reference to public utility tariffs is ambiguous.  This is manifest from the fact that Plaintiffs continue to incorrectly assert that no tariff applies in this case, and from the fact that a few courts have reached the same conclusion (from misrepresentation by the parties in those cases.)

It is telling that in the approximately 46 years since CIPA's passage, not a single case was brought against a business for service-observing activity until the last several years.  Seizing upon the ambiguity in the statute resulting from federal deregulation and technological changes, the plaintiffs' bar has now brought over 100

1   such cases in California in approximately the last two years.  In this context, CIPA's

2   legislative history, and the myriad statements stating that it was not meant to intrude

3   upon the PUC's jurisdiction over service-observing, is directly relevant and provides

4   a clarifying framework within which to approach the statute.  The fact that CIPA

5   does not apply to service-observing is not only evident in its legislative history, but

6   also in the PUC's rulemaking decisions.  In adopting GO 107-B, the PUC repeatedly

7   distinguished the activity CIPA was meant to cover from the different monitoring

8   activity governed by the PUC:

9   • "[u]nder §§ 630, 631, and 632 of the Penal Code, various acts including

10      wiretapping are proscribed; monitoring is not."  11 CPUC2d 692, 697;

11   • "Penal Code §§ 630 et seq. concern the specific subject of illegal wiretapping.

12      These sections do not remove the Commission's jurisdiction to require tariff

13      filings on the part of telephone utilities which control disconnection of service

14      for other reasons."  *Id*. at 698;

15   • "[M]onitoring is lawful, unlike wiretapping and certain classifications of

16      conduct covered by Penal Code §§ 630 et seq. . . ."  *Id*. at 699;

17   • "Section II.A. of the proposed GO defines lawful monitoring and then lists

18      certain exclusions such as wiretapping (Penal Code § 631) and eavesdropping

19      (Penal Code § 362 [sic])."  *Id*.

20      These statements provide further evidence that the PUC governs business

21   monitoring while CIPA governs the completely different subject of illicit

22   wiretapping or eavesdropping.  Indeed, the GO 107-B rulemaking procedure was

23   initiated because of the outcome of *Air Transport Employees v. Pac. Tel. & Tel. Co.,*

24   (D.93839, C. 10894, December 15, 1981), where a consumer brought a complaint to

25   the PUC against Western Airlines for its "supervisory monitoring . . .without notice,

26   at its facilities at San Francisco International Airport."  Western Airline moved to

27   dismiss on the grounds that it used its own "customer-provided" equipment to

28   monitor the calls, and the PUC dismissed the complaint.  However, recognizing the

1   gap in its enforcement structure, it began the rulemaking procedure that culminated

2   in the adoption of GO 107-B.  Of course, no criminal or civil action under CIPA was

3   brought against Western Airlines for the precise activity alleged in Plaintiffs' suit

4   against Omni, *because CIPA does not apply to such activity*.

5       Because the Public Utility Exemption unquestionably applies in this case,

6   Plaintiffs' FAC should be dismissed.

7   **III.   PLAINTIFFS FAIL TO ALLEGE A REASONABLE EXPECATION**

8        **OF PRIVACY IN THEIR CALLS WITH OMNI HOTELS.**

9       As set forth in the Motion, the California Supreme Court has expressly held a

10  conversation is confidential within the meaning of section 632 "if a party to that

11  conversation has an objectively reasonable expectation that the conversation is not

12  being overheard or recorded."  *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th

13  95, 117 n.7 (2006).

14      Plaintiffs attempt to wholly avoid the question of reasonable expectation of

15  privacy by claiming that no confidentiality is required for a section 632 claim at all.

16  In essence, they argue that it is a violation of CIPA any time a business (or any

17  individual) records a communication without the other party's consent, regardless of

18  the circumstances of the call.  But this is incorrect, as the California Court of Appeal

19  held that "the issue of whether there exists a reasonable expectation that no one is

20  secretly listening to a phone conversation" depends on "numerous specific factors,

21  such as whether the call was initiated by the consumer or whether a corporate

22  employee telephoned a customer, the length of the customer-business relationship,

23  the customer's prior experiences with business communications, and the nature and

24  timing of any recorded disclosures." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th

25  1377, 1396 (2011).  Plaintiffs do not allege facts regarding these critical inquiries.

26      To justify the lack of factual allegations regarding these inquiries, Plaintiffs

27  repeatedly and incorrectly state that the Ninth Circuit "reversed" the Northern

28  District in its decision in *Faulkner v. ADT Security Servs.*, 706 F. 3d 1017 (9th

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

1   Cir.2013).  Faulkner brought a putative class action against ADT, a home security

2   company, alleging that ADT recorded Faulkner's telephone conversation in which

3   he called to dispute a charge assessed by ADT, without his consent in violation of

4   Section 632 of CIPA.  Upon ADT's motion, the district court concluded that

5   Faulkner's pleadings failed to state a plausible claim upon which relief could be

6   granted and therefore dismissed the action.  Contrary to Plaintiffs' misleading

7   representation that the district court's decision was "reversed," (Opp'n at 6:1-4.), the

8   Ninth Circuit, after expressing grave doubts about Faulkner's CIPA claims,

9   remanded to the district court—in what it called an "overabundance of caution"—to

10  allow Faulkner to amend his complaint in attempt to meet federal pleading

11  standards.  In so doing, the appellate panel intimated that it agreed with the district

12  court's reasoning that a customer does not have a presumptively reasonable

13  expectation of privacy for typical customer service calls with a business—the very

14  presumption Plaintiffs urge the Court to adopt here.  Indeed, much like the plaintiff

15  in *Faulkner*, Plaintiffs barely include any facts regarding the circumstances of their

16  calls, and why they had an objectively reasonable expectation that their calls would

17  be private.  Certainly, they do not include many of the facts enumerated by the court

18  in *Kight*.

19  **IV.    OMNI HOTELS' MOTION TO STRIKE SHOULD BE GRANTED**

20  **BECAUSE A CLASS CANNOT BE CERTIFIED IN THIS CASE.**

21  **A.    Individualized Issues Will Necessarily Predominate.**

22  Given the requirement that each putative class member would need to

23  demonstrate that they had a reasonable expectation of privacy in their calls with

24  Omni Hotels, Plaintiffs' lawsuit cannot be maintained on a class basis, as individual

25  issues would predominate over common issues.  In its Motion, Omni Hotels

26  demonstrated that this inquiry would entail numerous individual questions[7] that

27  _____

28  [7] "[T]he issue of whether there exists a reasonable expectation that no one is secretly

1    cannot be resolved on a class basis.  Plaintiffs' arguments in rebuttal fail.[8]

2        In the interest of brevity, Omni Hotels does not address every flawed

3    argument here.  However, the fact that individualized inquiries will necessarily

4    predominate is evident from the analogous decision in *Hopkins v. Healthmarkets,*

5    *Inc.*, the sole published case dealing with class certification under CIPA, where the

6    court denied the plaintiff's motion for class certification on several grounds, among

7    which was the predominance of individualized issues. 2011 WL 7463408 (Nov. 30,

8    2011)  Plaintiffs make no effort to distinguish that case, which is on all fours with

9    their own FAC.

10   **B.    The Aggregated Statutory Damages Sought In This Case Run**

11        **Afoul of the Superiority Requirement of Rule 23(b) and Violate**

12        **Constitutional Due Process.**

13        In its Motion, Omni Hotels demonstrated that the prospect of massive

14   aggregated statutory damages in this case render a class action inappropriate.  *Kline*

15   *v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974) (a class action is

16   not superior if it seeks "outrageous amounts in statutory penalt[ies]" such that it

17   _____

18   listening to a phone conversation" depends on "numerous specific factors, such as

19   whether the call was initiated by the consumer or whether a corporate employee

     telephoned a customer, the length of the customer-business relationship, the

20   customer's prior experiences with business communications, and the nature and

     timing of any recorded disclosures." *Kight* , 200 Cal. App. 4th at 1396 (2011).

21

22   [8] Plaintiffs first claim that Omni Hotels' motion to strike is premature. (Opp'n at

23   16:16-28.)  But the United States Supreme Court has made clear that it is proper to

     strike class allegations at the pleading stage where it is clear that a class cannot be

24   maintained.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)

     ("Sometimes the issues are plain enough from the pleadings to determine whether

25   the interests of the absent parties are fairly encompassed within named plaintiff's

26   claim.")  Plaintiffs cite a few cases for the general proposition that motions to strike

     class allegations are not always granted at the pleading stage. While true, that does

27   not mean that it is improper to strike class allegations where, as here, it is clear from

28   the face of the FAC that a class could never be certified.

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

leads to an "*absurdum result*.")  This is obvious from the potential damages at issue.  Take as a hypothetical a normal business dealing with 10,000 customer calls in the year-long statutory period (likely a very conservative estimate for many businesses).  If each of those calls were subject to CIPA's $5,000 penalty (they are not, as discussed above), the resulting damages award would be $50 million.  It is patently obvious that the sums involved could reach into the hundreds of millions or billions of dollars.  Where statutes cumulate penalties, "[t]he exercise of a reasoned discretion is replaced by an adding machine," which may run afoul of constitutional protections against excessive fines and punishments.  *Hale v. Morgan*, 22 Cal.3d 388, 402 (1978); *Starbucks v. Super. Ct.*, 168 Cal. App. 4th 1436 (2008).  The operation of such penalty provisions "is mandatory, mechanical, potentially limitless in its effect regardless of circumstance, and capable of serious abuse."  *Id*. at 404 ($100 per day penalty for willful deprivation of tenant utilities, totaling $17,300, unconstitutional as applied to landlord).

Plaintiffs cite to *Bateman v. American Multi-Cinema, Inc.*, 632 F.3d 708 (9th Cir. 2010), in an effort to justify the aggregation of statutory penalties sought here.  *Bateman,* however, is easily distinguishable as it involved statutory damages under the Fair and Accurate Credit Transactions Act ("FACTA") which the court found to be compensatory in nature, consistent with class relief and therefore unsuited to a proportionality of damages argument.  Indeed, the *Bateman* court expressly distinguished *Kline* and other cases involving penalty provisions, and emphasized the FACTA's "compensatory function."  *Id*. at 715-716, 718-719, 721.

Moreover, Plaintiffs overstate the holding in *Bateman*.  Bateman expressly "reserved" the issue of whether district courts can consider the threat of "ruinous liability" as a factor weighing against the "superiority" of certifying a class.

There, the Ninth Circuit noted, "[i]t is widely accepted that class certification 'may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability.'" *Bateman*, 623 F.3d at 721,

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

1   citing Rule 23 Advisory Committee Notes.  The court declined to address whether

2   exposing a defendant to "ruinous liability" could be considered as a factor in a Rule

3   23(b)(3) "superiority" analysis, stating: "We reserve judgment as to whether a

4   showing of 'ruinous liability' would warrant denial of class certification in a

5   FACTA or similar action."  *Bateman*, 623 F.3d at 723.

6       Finally, in distinguishing *Kline* and other cases holding that aggregated

7   statutory penalties may be inappropriate, the court in *Bateman* focused on the

8   legislative intent of the statutes in question.  *Bateman*, 623 F.3d at 716 ("We think it

9   clear that the Rule 23(b)(3) superiority analysis must be consistent with the

10  congressional intent in enacting a particular statutory damages provision.")  Here,

11  given the clear statements by the Legislature that the statute was *not* intended to

12  address business monitoring or service-observing (indeed, expressing the positive

13  benefits of such activity), it is obvious that a class action is not the superior method

14  of adjudicating the controversy.

15      Given the fact that the only remedy available to Plaintiffs lies with the PUC's

16  disconnection procedure, and given the patent absurdity of aggregating statutory

17  damages to astronomical sums, Plaintiffs' FAC cannot survive as a class action.

18  //

19  //

20  //

21

22

23

24

25

26

27

28

37535.001-1022181v3.8 1:40 PM

16

Case No. 2:13-cv-02468-CAS-MANx

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS

## V.    <u>CONCLUSION</u>

When a business takes on the added expense of monitoring call center activity, it is only looking after its customers by ensuring quality service.  This practice was expressly exempted from CIPA's reach, as evidenced by the Public Utility Exemption and CIPA's legislative history.  For all of the foregoing reasons and for the reasons raised in the Motion, Omni Hotels respectfully requests that the Court dismiss the FAC with prejudice.

DATED: June 10, 2013

LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP


By:  <u>/s/ Angela C. Agrusa</u>
Angela C. Agrusa
Attorneys for Defendant OMNI HOTELS
MANAGEMENT CORPORATION

OMNI HOTELS MANAGEMENT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT/STRIKE CLASS ALLEGATIONS