UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

James Hannink
James Clapp
Zev Zysman

Attorneys Present for Defendants:

Angela Agrusa

**Proceedings:**   MOTION FOR CLASS CERTIFICATION (Docket #54, filed April 30, 2014)

## I.    INTRODUCTION

Plaintiffs Steven Ades ("Ades") and Hart Woolery ("Woolery") filed the instant putative class action on March 15, 2013 in Los Angeles County Superior Court. Defendant in this action is Omni Hotels Management Corporation ("Omni"). Omni removed the case to this Court based on diversity of citizenship on April 8, 2013. Dkt. #1. Plaintiffs have since sought to substitute Jonathan Murphy ("Murphy") for Woolery as class representative. Dkt. #55, 59.

On April 29, 2013, plaintiffs filed a First Amended Complaint ("FAC"). The FAC asserts claims for relief pursuant to the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 et seq. In brief, these claims assert that plaintiffs called Omni's toll-free telephone numbers and provided Omni representatives with personal information. FAC ¶¶ 16 – 17. Plaintiffs allege that when they placed their calls to Omni's toll-free telephone numbers, they were not apprised that the call might be recorded. Id. Plaintiffs further allege that Omni has a company-wide policy of recording inbound telephone conversations with consumers without seeking permission or informing consumers about the monitoring. Id. ¶¶ 18 – 19.

On April 30, 2014, plaintiffs filed a motion for class certification. Dkt. #54. Omni filed an opposition on July 16, 2014. Dkt. #62. Plaintiffs replied on August 25, 2014.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

#71.  The parties appeared at oral argument on September 8, 2014.  Following the hearing, Omni submitted a supplemental declaration, Dkt. #77, and a supplemental brief addressing a hypothetical posed during argument, Dkt. #78.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiffs contend that they called Omni's toll-free phone number and, without being warned that their calls were being recorded, provided Omni representatives with personal information including their names, phone numbers, e-mail addresses, and credit card numbers and expiration dates.  FAC  ¶¶ 16-17.  Plaintiffs allege that unwarned and unconsented recording and monitoring of inbound calls pursuant to Omni company policy violated § 632.7 of CIPA, entitling them to statutory damages.  Id. ¶¶ 31-46.  Plaintiffs seek to certify a class of

> All individuals who, between March 15, 2012 and March 22, 2013, inclusive (the "Class Period"), while physically present in California, participated in a telephone call with a live representative of Omni that was: (1) placed to [one of several Omni toll-free numbers], (2) made from a telephone number that includes a California area code; and (3) transmitted via cellular telephone on the network of AT&T, Verizon Wireless, or Sprint.  The class excludes all employees of defendant and plaintiffs' counsel and their employees.

Dkt. #59.

## A.    Omni's Call Center

Omni owns a chain of approximately fifty hotels and resorts.  At issue are calls placed to Omni's Customer Contact Center ("Call Center") in Omaha, Nebraska, regarding hotel reservations.  L. Reynolds Decl. ¶ 2.  During the Class Period, it was Omni's policy to record all calls to the toll-free phone numbers listed in the putative class definition.  Liu Depo. at 100:24 - 102:11.  According to Omni, these calls were used for the sole purpose of ensuring quality customer service.  L. Reynolds Decl. ¶ 3.  Omni did not record outgoing calls placed by its agents to customers.  Korner Decl. ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Approximately 900,000 call recordings have been preserved from the Class Period, and Omni's records reflect calls from approximately 40,000 telephone numbers with California area codes during that time.  Id. ¶ 5; Levitan Decl. ¶ 22.

Omni did not have a policy during the Class Period of warning callers that their calls would be recorded.  Resp.  Ades Interrog. #9, at 9.  On March 25, 2013, after learning of this lawsuit, Omni began playing an automated warning at the outset of all calls received at the Call Center: "To ensure quality service, this call may be monitored or recorded."  Id.  The Call Center's General Manager has stated that during the Class Period, Reservation Agents were permitted to tell callers they were being recorded if asked, but were not instructed to advise callers otherwise.  Liu Decl. at 105:2-15; Def.'s Resp. Woolery Interrog. #15.  The same manager stated that he is not aware of any documents provided to callers during the Class Period warning that calls may be monitored or recorded.  Liu Decl. at 103:12 - 104:5.  In response to discovery requests, Omni has not identified any callers who were advised their calls were being recorded, but maintains that callers "knew or were generally aware that their calls were being recorded."  Def.'s Resp. Woolery Interrog. #15.

## B.     Omni's Monitoring and Record Keeping Systems

During the Class Period, Omni used an automated phone system called "Aspect" to direct inbound calls to reservation agents.  The Aspect system also documented incoming call information including the telephone number of the caller, the Omni extension that was called, the name of the agent who handled the call, and the date, start time, and duration of the call.  Liu Depo. at 154:1 - 155:19.  During the Class Period, Omni also used a system called "Qfiniti," which recorded and stored telephone calls as WAV audio files and compiled related call detail data.  Resp. Woolery Req. Admis. #1-3 (Pl.'s Ex. 6) at 145-46.  Finally, Omni used a system called "Opera" to record call information relating to reservations.  The Opera system recorded some information automatically, including the date and time the reservation was made.  Liu Depo. at 247:7-17.  Reservation Agents manually entered other information pertaining to reservations into the Opera system. Using Opera records, Omni has produced data concerning approximately 36,000 reservations made during the Class Period associated with telephone numbers with California area codes.  Id. at 227:19 - 228:9.  These associated telephone numbers were not necessarily the same telephone numbers used to make the reservation.  Id. at 228:4-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Additionally, Omni has provided evidence that less than 50% of calls to the Call Center result in reservations, that an unspecified "large percentage" of callers call on behalf of someone else, and that the name of the caller is "frequently" not entered in reservation records. See Etherington Decl. ¶¶ 8-9. A computer specialist consulted by Omni has stated that slightly less than half of the reservation records "have at least some information entered in one or both of the 'caller name' fields." Okhandiar Decl. ¶ 7b.

Omni maintains that despite the policy of recording all incoming calls to the Call Center during the Class Period, a significant number of calls were not actually recorded.[1] Omni has provided evidence that the Qfiniti system consisted of twenty-one different services (e.g., separate screen capture and voice recording programs), and that when one or more services went down, the entire Qfiniti system had to be taken offline, during which time no calls were recorded. See Korner Decl. ¶ 4c. Omni's IT Support Manager for the Call Center stated that as a result, an unknown but "not insubstantial" number of calls were not recorded. Id. The recording system was also offline for approximately seven minutes every three months during quarterly Windows updates. Korner Decl. ¶ 4d; Korner Depo. at 36:2-14. Additionally, it took some time for new Reservation Agents to be added to the Qfiniti system, during which time any calls allocated to those new agents were not recorded. Korner Decl. ¶ 4e. An Omni agent has stated that this could "last all day or an entire weekend without being cured." Id. Another of Omni's employees has stated that he is aware of "several situations" in which, for unknown reasons, Omni was unable to access calls that should have been recorded. Liu Depo. 116:17 - 117:23. Another Omni employee who started as a Reservation Agent has stated that her efforts to pull recordings made during the Class Period were unsuccessful approximately 30% of the time. Etherington Decl. ¶ 6.

Omni maintains that it is impossible to determine which specific calls were not recorded due to these various technical issues. Korner Decl. ¶ 4. One Omni employee

---

[1]Initially, Omni contended that for nearly three months of the class period, the installation of a new T-1 line caused twenty percent of the calls not to be recorded. See Mem. Opp'n Class Cert. at 19; Korner Decl. ¶¶ 2-6. However, Pat Korner has since declared that the new T-1 line was not installed until April 11, 2013, after the close of the Class Period. See Korner Suppl. Decl. ¶¶ 2-4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

explained that although documents in Omni's "ticketing system" could identify some periods during which a system glitch would have prevented the recording of telephone calls, not all glitches were ticketed and those that were ticketed would not directly reflect the calls not recorded.  Korner Depo. at 28:2-23.  Omni has produced a list of "tickets referencing the Qfiniti system during the Class Period and indicating that calls were not recorded."  See Korner Suppl. Decl. Ex. A.  This list notes thirty-nine instances of problems that could have affected call recording or call detail capture, but Omni states that it cannot tell which data were not recorded as a result, and that other glitches were not ticketed at all.  Id.

### C.     Retention and Search Functionality of Call Records

Aspect call records can be searched by the telephone number of the caller or receiving line; the date, start, or end time of the call; or the name of the agent who handled the call.  Liu Depo. at 155:23 - 156:24.  These call records do not, however, include the identity of the actual caller, the geographic origin of the call, the carrier that routed the call, whether the caller was using a cellular or landline phone, or whether the call was recorded.  Korner Decl. ¶ 6. Moreover, as explained below, the Qfiniti audio recordings and related call data for the Class Period are not easily searchable.

Omni has provided evidence that upon learning of the filing of the lawsuit, it asked IT employee Pat Korner to preserve call recordings that had not already been automatically deleted.  Korner Decl. ¶ 10.  During the Class Period, the Omni system was set to automatically delete call recordings and related data within 140 to 180 days of the call date, depending on whether the call recording was listened to by a specialist.  Korner Decl. ¶ 11; Korner Depo. at 100:22 - 101:10.[2]  Automatically deleted or "aged" data cannot be recovered.  Maly Decl. ¶ 9.  Korner turned off this "aging function" immediately upon being told of the litigation.  Korner Decl. ¶ 10.  He then contacted the Qfiniti vendor with whom Omni had a service contract for help in preserving the call recordings and related data.  Id. ¶ 14.  Korner stated that he explained to Qfiniti that he

---

[2]Omni contends that plaintiffs' counsel did not send Omni a litigation hold letter before filing the lawsuit, which plaintiffs have not disputed.  See Korner Decl. ¶ 11; Mem. Opp'n Class Cert. at 5-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA         "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

"needed to preserve indefinitely the WAV file folders containing the Class Period recordings and all related call detail stored in Qfiniti." Id. ¶ 15. Pursuant to instructions from Qfiniti, and after Qfiniti staff had classified the records as "do not delete," Korner moved the records to a separate storage system. Id. ¶ 17. Qfiniti attempted to run a test to ensure that the records had been successfully preserved, but this test failed because of insufficient Random Access Memory. Id. Korner then marked the audio recordings "read only" as an additional protection against automatic deletion. Id. ¶ 19.

The audio recordings were successfully moved to the separate storage and remain preserved along with screen capture data reflecting "all information typed into the Omni reservation system by the Reservation Agent," including the agent name, date and time of call, name on reservation, and billing address. Korner Decl. ¶ 18. Omni possesses audio recordings of 493,584 calls made during the Class Period. Resp. Ades Interrog. #10, at 4. However, the "do not delete" reclassification performed by Qfiniti failed for apparently unknown reasons, resulting in the loss of related call detail records and attendant search functionality when the aging function was reactivated. Korner Decl. ¶¶ 19, 24. Korner states that he did not realize the mistake had been made until approximately seven months after the preservation efforts. Korner Depo at 144:25 - 145:25. Because all Qfiniti call data is deleted within 180 days, this means that the linked call detail database for all calls made during the Class Period has been destroyed.

Korner and an expert retained by Omni maintain that relying on Qfiniti's support service was reasonable and in line with industry standards. Korner Decl. ¶ 12; Garrie Decl. ¶¶ 12-13, 16. But plaintiffs' expert, John Maly ("Maly"), criticizes Korner and Omni's preservation efforts on several grounds. First, Maly submits that it was unreasonable for Omni to rely on Korner, who was not extensively trained in Qfiniti , to preserve the records. Maly Decl. ¶ 18. Maly also maintains that Omni operated Qfiniti system with insufficient disk space. Id. ¶ 20. Maly contends that Korner should have consulted the Qfiniti manual instead of relying on Qfiniti support, and should have begun the preservation process by making a complete backup of the call data. Id. ¶¶ 19, 27. Further, Maly maintains that the failed test should have prompted Korner to take the system offline and explore other preservation methods, including applying the "read-only" classification to the call detail data, and that Omni should have performed other tests to ensure the relevant data was preserved. See id. ¶¶ 14-15, 28-32. Korner responds that Qfiniti representatives were confident that their "do not delete" classification would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

succeed in preserving the call detail data, and that applying the "read-only" classification to the call detail data as Korner did for the audio recordings would have interfered with ongoing recording operations. Korner Decl. ¶ 24. Korner also denies that Omni operated the Qfiniti server with insufficient disk space. Id. ¶ 28.

The parties and their experts disagree on the scope of search functionality lost when Qfiniti's preservation attempts failed. Maly contends that the deletion of the call detail data severely hampered the searchability of the audio recordings, which are now unclassified. Maly Decl. ¶ 16. If the data had been preserved, plaintiffs argue, Omni could have easily accessed all of the audio recordings made from telephone calls with California area codes. Id. ¶ 6. Moreover, plaintiffs argue that if Omni had acquired and used an optional Qfiniti voice recognition feature, the parties could have searched the calls by relevant words or phrases. Id. Omni does not currently, and during the Class Period did not, have this add-on search feature. Liu Depo. at 238:8 - 239:25. Korner has stated that he has "no reason to believe" that the add-on search functionality could be applied after the fact to recordings made before installation of the upgrade. Korner Decl. ¶ 21. Omni has submitted evidence that without this add-on functionality, even had all records been completely preserved, they could not have been searched by key words spoken during a conversation, but rather only by "the caller's telephone number, the telephone number called, the time and date the call was received, the duration of the call and the name of the Reservation Agent." Id. ¶ 20. Moreover, Omni argues that all of the data lost is available and searchable by other means. The preserved call recordings can be searched by date and time, and Omni has produced data reflecting the telephone number, date and time, Reservation Agent, and reservation customer name (if any) for each call made during the Class Period. Id. Plaintiffs submit that although the records would have been more easily searchable had Omni done more to protect the evidence, they can still be searched sufficiently to make the class action manageable. See Okhandiar Decl. ¶ 9 (explaining initial efforts to link Aspect and Opera information). Plaintiffs point out that Omni was able to search for and locate the calls of Ades and Woolery soon after learning of the lawsuit. See Liu Depo. at 213:23 - 214:5.

**D.     The Putative Class Representatives**

Ades placed a call to one of Omni's toll-free reservation numbers on January 9, 2013. Ades Decl. ¶ 5. Ades placed the call using a cordless handset in conjunction with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-cv-02468-CAS(MANx) | | Date | September 8, 2014 |
|----------|-------------------------|---|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | | |

a "Home Phone Connect" system from Verizon Wireless, which transmitted the call over the Verizon Wireless cellular network. Id. ¶ 7. He has declared that he did not receive any warning that the call would be recorded, did not know Omni was recording the call, and did not consent to being recorded. Id. ¶ 5. Murphy called one of Omni's toll-free reservation numbers on June 11, 2012, using a cellular telephone serviced by the AT&T wireless network. Murphy Decl. ¶ 5. Murphy has declared that he was not told Omni was recording his calls and neither knew about nor consented to being recorded. Id.

## III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions and requires a "rigorous analysis." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ---, ---, 131 S.Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the plaintiffs have satisfied "through evidentiary proof at least one of Rule 23(b)'s provisions." Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013). Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title    | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)).  The predominance inquiry measures the relative weight of the common to individualized claims.  Id.  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)).  In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action.  Id. at 1190–1993.  "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."  Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (2d. 3d. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Dukes, 131 S.Ct. at 2551.  This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Id.

## IV.   ANALYSIS

### A.   Whether the Class is Ascertainable

Omni argues that even if the requirements of Rule 23 discussed below are met, certification is not appropriate because the classes are not ascertainable.  "Although there is no explicit requirement concerning the class definition in [Rule 23], courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed."  Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482 (N.D. Cal. 2011).  An ascertainable class exists if it can be identified "by reference to objective criteria."  Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 593 (C.D. Cal. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Plaintiffs argue that the proposed class definition sets forth objective criteria by which individuals can identify themselves as members of the class and the court can administratively determine who is a class member.  They argue that the Omni Aspect list and telecommunications databases can be used to identify phone calls to Omni during the Class Period associated with California cellular telephone numbers, and that reverse lookup directories or wireless carrier records can be used to identify callers on the Verizon Wireless, AT&T Wireless, and Sprint cellular networks.  Plaintiffs contend that the physical location of the caller at the time of the call can be determined objectively through records of the wireless carrier that handled each call, and that reservation records can also help identify class members.  Finally, plaintiffs assert that any difficulties in identifying class members are attributable to Omni's destruction of data that could have been used to search the audio recordings, and that it would be unfair to allow such difficulties to prejudice class certification.

Omni denies that the proposed class can be ascertained without resort to individualized, fact-intensive questions.  First, Omni contends that many calls during the class period were not recorded due to technical problems and cannot be easily separated from calls that were recorded.  Second, Omni argues that the mobility of cellular phones makes it impossible to determine on a classwide basis which calls from California telephone numbers were made while the putative class member was physically in California.  To the extent that plaintiffs rely on wireless carrier records for such determinations, Omni argues that plaintiffs "have not met their burden to demonstrate that those private records will *actually be produced* and that they will be *complete and accurate*."  Mem. Opp'n Class Cert. at 20.[3]  Omni submits that the imprecision of cell site location data would create additional uncertainty for any calls placed from near any of California's borders.  Finally, Omni argues that even if records indicate the identify of the cell phone numbers at issue, that does not establish the identify of the *callers* on a classwide basis.  Omni contends that family members, assistants, and other people borrow and use cell phones to make calls, and that the name of the guest on a reservation record is often distinct from the person who made the reservation over the telephone.

---

[3]In particular, Omni avers that Sprint call data was not preserved between March and July of 2012.  See First Keep Decl. ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|--------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Plaintiffs respond that the vast majority of calls were indisputably recorded and that, to the extent Omni can produce evidence that specific calls were not, those callers can be excluded from the class. Plaintiffs reiterate that the origin of calls can be shown by cell site location data, and argue that courts routinely certify California-only classes despite the absence of commercial records independently documenting residency.

The Court does not find a lack of ascertainability to defeat class certification here. Courts in this circuit have found it "enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." McCrary v. The Elations Co., LLC, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014). Plaintiffs' class definition sets forth objective characteristics sufficient to enable prospective class members to identify themselves. The definition limits the class to those who made a call within a certain time period, while located in a specific geographic area, from a cellular phone, on one of three wireless networks, to a particular set of toll-free telephone numbers. Potential class members can show that they fit the class definition through records identified by plaintiffs showing that the putative class members' qualifying cellular telephones were used to call one of the specified Omni lines from California during the Class Period.

To the extent that Omni has evidence that some of these calls were not recorded or were not placed from California or by the putative plaintiff, Omni can offer that evidence to disqualify class members. And district courts may narrow or decertify a class before final judgment. See F. R. Civ. P. 23(c)(1)(C). But the possibility that Omni may be able to disqualify some putative class members if more evidence comes to light does not make the class unascertainable: "in the Ninth Circuit there is no requirement that the identify of the class members . . . be known at the time of certification." Werdebaugh v. Blue Diamond Growers, No. 12-cv-2724-LHK, 2014 WL 2191901, at *11 (N.D. Cal. May 23, 2014).

Moreover, the cases cited by Omni are readily distinguishable. In Adashunas v. Negley, 626 F.2d 600, 603 (7th Cir. 1980), the Seventh Circuit found unascertainable a class of "children entitled to a public education who have learning disabilities and 'who are not properly identified and/or who are not receiving' special education." The court reasoned that "identifying learning disabled children is a gargantuan task," especially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

because children who had already been properly identified as learning disabled were excluded from the class.  See id. at 603-04.  That inquiry bears no relation to the case at hand.  And in Stalley v. ADS Alliance Data Systems, Inc., 296 F.R.D. 670, 685-86 (M.D. Fla. 2013), there was evidence that well over a million calls had not been recorded during the class period.  Omni's evidence that some small percentage of unspecified calls were not recorded despite Omni's policy of recording every incoming call does not approach the scale of unrecorded calls in Stalley.  Plaintiffs have defined an ascertainable class and, to the extent Omni argues that "identifying class members" may be difficult, those "concerns are more properly addressed after class certification, except to the extent that they create manageability problems that should be considered under Rule 23(b)(3)."  Agne v. Papa John's Int'l, Inc., 286 F.R.D. 559, 566 (W.D. Wash. 2012).

### B.     Rule 23(a) Requirements

1.     Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered.  However, numerosity is presumed when where the plaintiff class contains forty or more members."  In re Cooper Cos. Secs. Litig., 254 F.R.D. 628, 634 (S.D. Cal. 2009) (internal citations omitted).  Moreover, "it is not necessary to state the exact number of class members when the plaintiff's allegations plainly suffice to meet the numerosity requirement."  Id. (internal quotation marks omitted).  Plaintiffs state that the putative class involves "individuals who collectively placed about 13,000" qualifying calls to Omni during the Class Period.  Omni does not contest numerosity, and the allegations "plainly suffice" to meet Rule 23(a)(1).

2.     Commonality

Rule 23 also requires the plaintiffs to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 131 S.Ct. at 2551 (internal quotation marks and citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." <u>Id.</u>

The predominance inquiry under Rule 23(b)(3) is "similar to," but more demanding than, the commonality inquiry under Rule 23(a)(2). <u>See</u> <u>Amchen Prods., Inc.</u> <u>v. Windsor</u>, 521 U.S. 591, 623 n.18 (1997). In other words, a class cannot be certified if common questions of law exist, but are outbalanced by individual questions; conversely, if plaintiffs show predominance, they necessarily show commonality. Omni's opposition addresses commonality and predominance together and, for efficiency's sake, the Court does as well in IV.B.1, below.

3.      Typicality

Rule 23 next requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2). The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." <u>Wolin v. Jaguar Land Rover North Am., LLC</u>, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" <u>Costco</u>, 657 F.3d at 984 (quoting <u>Hanlon</u>, 976 F.3d at 508)). Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020. Where a class representative is subject to unique defenses, typicality may not be satisfied. <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement tends to overlap with the commonality and adequacy requirements. <u>See</u> Newberg on Class Actions (Fifth) § 3:30.

Plaintiffs contend that the claims of Ades and Murphy are typical of those of the class because they derive from Omni's recording of cellular telephone calls without consent. Omni's opposition brief does not specifically challenge plaintiffs' showing of typicality, but its "background" section contends that there is insufficient evidence that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Ades called from a cellular telephone. Plaintiffs respond with deposition testimony explaining that Ades called from a cordless phone plugged into the base station of a Verizon Wireless Home Phone Connect system, and that his call to Omni took place over the Verizon Wireless cellular network.

Ades's and Murphy's claims are "reasonably co-extensive" with those of other putative class members. They allege a course of conduct by Omni common to the class, and privacy invasions typical to those of the class generally. Therefore, the typicality requirement is met.

    4.    Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry involves whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that adequacy is met because Ades and Murphy do not have interests antagonistic to those of the class, and because plaintiffs' counsel have experience with class actions, including ones involving CIPA. Omni contests adequacy on the ground that the putative class action is "attorney-driven and constructed." Mem. Opp'n Class Cert. at 24. Omni argues that former putative class representative class representative Woolery gave false deposition testimony unchecked by plaintiffs' counsel, and that the substitution of Murphy for Woolery was procedurally improper.

It does not appear that either Ades or Murphy has interests antagonistic to the class, and plaintiffs have offered evidence that they will prosecute the action vigorously. Moreover, the Court has the authority to authorize a class representative at this stage who was not previously a named plaintiff. See Manual for Complex Litigation (Fourth) § 21.26 (explaining that a district court "may simply designate [the new] person as a representative in the order granting class certification"). Additionally, assuming that Murphy was solicited by counsel, that does not undermine a finding of adequacy. There is nothing inherently improper with the recruitment of class representatives, and where existing named plaintiffs become unavailable or unsuitable, allowing the recruitment of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

replacements is even recommended.  Manual for Complex Litigation (Fourth) § 21.26; In re Vitamin C Antitrust Litigation, 279 F.R.D. 90, 108 (E.D.N.Y. 2012).  Moreover, even where solicitation of clients is improper under rules of professional responsibility, denial of class certification is not an appropriate remedy.  Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1324 (11th Cir. 2008).  Therefore, plaintiffs have established adequacy.

**C.    Rule 23(b)(3) Requirements**

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).  A class proponent carries the burden of showing compliance with Rule 23(b)(3) "through evidentiary proof."  Comcast, 133 S.Ct. at 1432.

1.    Predominance

The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy."  Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 625 (1997).  "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately."  Gartin v. S&M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007).  "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved."  Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  The focus is on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., 521 U.S. at 623.

In support of commonality and predominance, plaintiffs assert that common questions include "(1) whether Omni had a policy and practice of recording calls to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. |

Contact Center; (2) whether Omni had a policy and practice of advising callers that telephone calls are recorded; (3) whether the callers consented to the recording; and (4) the monetary and injunctive remedies to which class members are entitled."  Mem. Supp. Class Cert. at 20-21.  Plaintiffs argue that classwide evidence can establish a prima facie case that the calls were recorded, that class members were not warned of recording, and that class members did not consent to the recording.

Omni asserts that two types of individual issues will predominate.  First, Omni argues that plaintiffs cannot prove on a classwide basis the "injury" required to bring a damages action under § 637.2 because some putative class members assumed their calls would be recorded, and therefore suffered no harm from being recorded without warning. But as explained more fully in the Court's order denying Omni's motion for summary judgment, the only "harm" required by § 637.2 "is the unauthorized recording." California Practice Guide: Civil Procedure Before Trial Claims & Defenses § 4:1690; see In re Google Inc. Gmail Litig., No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *65-67 (N.D. Cal. Sep. 26, 2013) (rejecting an argument that § 632.7 requires independent injury aside from an invasion of statutory CIPA rights); Lieberman v. KCOP Television, Inc., 110 Cal. App. 4th 156, 167 (2003) ("[A]n actionable violation of section 632 occurs the moment the surreptitious recording is made.").

Next, Omni contends that the question of implied consent to recording will require individualized inquiries.[4]  In support, Omni cites (1) declarations of putative class

---

[4]It is unclear whether § 632.7 places the burden of showing consent or a lack thereof on plaintiffs or defendants, and the Court did not find a case addressing the issue in the CIPA context.  On the one hand, the California Advisory Committee's jury instructions on § 632.7 require a plaintiff to show that a defendant "did not have consent of all parties to the conversation."  Judicial Council of California Civil Jury Instruction 1809.  On the other hand, at least some cases interpreting similar federal privacy statutes–which both parties cite as instructive on consent issues–seem to place the burden on the defendant.  See, e.g., In re Pharmatrak, Inc., 329 F.3d 9, 19 (1st Cir. 2003) ("We think, at least for the consent exception under the [Electronic Communications Privacy Act] in civil cases, that it makes more sense to place the burden of showing consent on the party seeking the benefit of the exception, and so hold."); In re Yahoo Mail Litig., No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

members indicating an expectation that calls to Omni or similar companies would be recorded; (2) requests by putative class members that recordings of prior calls be accessed, suggesting awareness that those calls were recorded; and (3) a survey concluding that half of California residents who called "business class or luxury hotels" within a recent one-year period assumed their calls were recorded.

Plaintiffs criticize Omni's conceptualization of and evidence of implied consent. Plaintiffs deny that any of the three declarants cited are class members, and argue that regardless, the declarations do not show consent prior to recording. They argue that Omni has not shown that any request to access prior recordings was made by a class member, and that in any event such a request would not show consent, which requires "at a minimum . . . evidence that the class member had actual knowledge that Omni was recording the call." Mem. Supp. Class Cert. at 15. Finally, plaintiffs criticize the study on several grounds. First, they argue that it tested expectations, not consent. Second, they contend that the studied population does not correspond to the class because the survey asked about a time period beginning several months after the close of the Class Period. In the interim, plaintiffs argue, Omni began warning all callers of monitoring and recording, and similar hotels may also have changed their policies. Finally, plaintiffs attack the sampling methodology and phrasing of Omni's survey.

Omni relies heavily on a single sentence from Torres v. Nutrisystem, Inc., 289 F.R.D. 587 (C.D. Cal. 2013). In that case, denying a class certification pursuant to § 632.7 of callers who had bypassed an automated recording disclosure, the district court stated that "callers who never heard the Disclosure, but actually expected the calls to be recorded, may have impliedly consented to the recording by the very act of making the

---

5:13-cv-04980, 2014 WL 3962824, at *7, — F. Supp. 2d — (N.D. Cal. Aug. 12, 2014) (similar). Either way, the Court notes that plaintiffs have put forth undisputed evidence that Omni did not notify putative class members that they would be recorded at the outset of the calls at issue. Further, whether or not consent is an affirmative defense, the issue for purposes of predominance remains whether the evidence shows that individual inquiries into consent will dominate the trial. Cf. Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 295 (1st Cir. 2000) (stating that "affirmative defenses shoudl be considered in making class certification decisions").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

call."  Id. at 595.  But the Court finds more persuasive a more detailed analysis by the California Supreme Court in Kearney of § 632, which contains the identical "without the consent of all parties" language as § 632.7.  In that case, the court explained:

> As made clear by the terms of section 632 as a whole, this provision does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation, *that is, from recording the conversation without first informing all parties to the conversation that the conversation is being recorded*.  If, after being so advised, another party does not wish to participate in the conversation, he or she may simply decline to continue the communication.  A business that *adequately advises all parties to a telephone call, at the outset of the conversation*, of its intent to record the call would not violate the provision.

Kearney, 39 Cal. 4th at 117-118 (emphasis added).  In a footnote, the Supreme Court also criticized the precise argument Omni makes here:

> [T]he Court of Appeal suggested that even in the absence of an explicit advisement, clients or customers of financial brokers such as SSB "know or have reason to know" that their telephone calls with the brokers are being recorded.  The Court of Appeal, however, did not cite anything in the record or any authority establishing such a proposition as a matter of law, and in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded . . . .

Id. at 118 n.10.  Thus, the Court does not find that evidence that some class members *expected* their calls to be recorded raises predominant issues of consent in the absence of any evidence that Omni–or anyone else–ever notified callers that Omni would record their calls before or at the outset of any call.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Omni argues that individual issues of consent will predominate even in the absence of any prior notice, because consent "is an intensely factual question" that "requires looking at all of the circumstances . . . to determine whether an individual knew that her communications were being intercepted." In re Google, Inc. Gmail Litig., No. 13-MD-02430, 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014). But Omni cites no case in which a class was rejected on consent grounds despite the absence of any evidence of advance notice. Despite extensive discovery, Omni has not produced evidence that a single person meeting the class definition actually consented to a call being recorded during the Class Period.[5] Nor does the Court find the declarations of Omni's employees or the Zauberman study sufficient to show that individual consent issues will predominate. As the Ninth Circuit stated in a Title III wiretapping case cited by Omni, "foreseeability of monitoring is insufficient to infer consent." United States v. Staves, 383 F.3d 977, 981 (9th Cir. 2004).[6] Thus, that unidentified callers sometimes

---

[5]This statement does not depend on the fact that plaintiffs have narrowed their proposed class definition since the First Amended Complaint. Even if all three declarants did fit the class definition, their evidence would only indicate that they anticipated that they might have been recorded and were not aggrieved to find out that they were–not that they actually consented at the time of the call.

[6]At oral argument, Omni submitted that the Court ignores the next sentence of Staves: "Rather, the circumstances must indicate that a party to the communication knew that interception was likely and agreed to the monitoring." 383 F.3d at 981. Omni has not produced evidence that any class members "agreed to the monitoring." Moreover, the parenthetical to that sentence's citation reads, "inferring knowing agreement to monitoring of prison telephone conversations *where the defendant received several warnings of the monitoring*." Id. (emphasis added)). In the case described by that parenthetical, United States v. Van Poyck, 77 F.3d 285, 292 (9th Cir. 1996), a law enforcement agency had "posted signs above the phones warning of the monitoring and taping. Furthermore, Van Pock signed a consent form and was also given a prison manual a few days after his arrival." The Van Poyck court also cited a previous case in which consent was inferred where the caller "(1) had attended a lecture discussing the taping procedure; (2) had been given a copy of the Inmate Information Handbook discussing the procedure; (3) had seen notices posted on telephones; and (4) had signed a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

asked for previous calls to be accessed, suggesting that they thought those calls might have been recorded, does not show that evidence of individual consent to recording will dominate the trial.  Nor does Omni's study, even ignoring plaintiffs' methodological criticisms, show that any individual class members actually consented at the time to their calls being recorded by Omni.

Thus, unlike in the cases Omni cites, there is no indication that individual consent issues will overwhelm issues plaintiffs have shown to be resolvable through classwide proof.  Compare In re Google, Inc. Gmail Litig., 2014 WL 1102660, at *17-18 (finding that individual inquiries into consent would be necessary where Google pointed out that putative class members could have learned of Google's email scanning from various Google and third-party service provider disclosures as well as widespread media coverage of Google's scanning practices), and Nutrisystem, 289 F.R.D. at 595 (many putative class members had likely heard a disclosure of recording on a prior call before bypassing the disclosure on a subsequent call), with Silbaugh v. Viking Mag. Servs., 278 F.R.D. 389, 393 (N.D. Ill. 2012) ("Having produced no evidence that any individual consented to receive the text messages . . . defendant is unable to realistically argue that individual issues regarding consent outweigh the commonality.").  Moreover, Omni "is in the best position to come forward with evidence of individual consent and will not be precluded from presenting admissible evidence of individual consent if and when individual class members are permitted to present claims."  Agne v. Papa John's Int'l, Inc., 286 F.R.D. 559, 570 (W.D. Wash. 2012).  The Court can of course reconsider the propriety of class adjudication at a later juncture if such evidence comes to light.

Therefore, on the record before it, the Court finds that plaintiffs have met their burden of showing that common questions will predominate at trial.

---

form consenting to the procedure."  Id. (citing United States v. Amen, 831 F.2d 373, 379 (2d Cir. 1987)).  Here, as stated above, Omni has presented no evidence that a single caller received a single warning of monitoring or recording.  A detailed examination of Staves therefore provides even more support for plaintiffs' position.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

      2.     Superiority

Rule 23(b)(3) sets forth four relevant factors for determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id.

"[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks and citation omitted), amended by 273 F.3d 1266 (9th Cir. 2001). District courts may also consider "other, non-listed factors," as the Ninth Circuit has recently reiterated:

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large, and (6) of the defendant. The listing is not necessarily in order of importance . . . . Superiority must also be looked at from the point of view of the issues."

Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 713 (9th Cir. 2010) (quoting Kamm v. Cal City Dev. Co., 509 F.2d 205, 212 (9th Cir. 1975)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

Plaintiffs submit that a class action is superior because the only alternative would be "thousands of separate cases litigated from start to finish."  Mem. Supp. Class Cert. at 24.  Moreover, they assert that available damages are insufficient to incentivize individual litigation, that there is no evidence of existing litigation involving the same claims or parties, and that the Central District is not an undesirable forum.  Finally, plaintiffs contend that a class action will be manageable because the key evidence can be presented through a relatively small number of witnesses and, to the extent Omni has admissible evidence that certain calls were not recorded or were consented to, Omni can present that evidence in its defense.  Omni responds that adequate incentives exist for individual lawsuits in the form of CIPA's minimum damages of $5,000.  Moreover, Omni argues that, when aggregated on a classwide basis, CIPA's damages would be grossly excessive as to violate the Due Process Clause.  Plaintiffs respond that under Bateman, consideration of "excessive" statutory damages is improper at the class certification stage.  See 623 F.3d at 708.

The Ninth Circuit in Bateman "reserve[d] judgment . . . on whether Rule 23(b)(3) *per se* prohibits consideration of a defendant's potential liability in deciding whether to certify a class."  623 F.3d at 713 n.3.  Nevertheless, the Court finds sufficient similarities between Bateman and this case to decline to consider allegedly excessive damages as weighing against superiority.  Bateman involved a putative class action brought under the Fair and Accurate Credit Transactions Act (FACTA), a federal statute that, like CIPA, provides for statutory damages upon proof of a privacy violation, without evidence of actual damages.  Id. at 717-18.  The court noted that while many district courts, including several within the Ninth Circuit, had found potential liability a proper superiority consideration, the only federal court of appeals to have addressed the issue with regard to a similar damages provision had held such consideration improper.  Id. at 715 (discussing Murray v. GMAC Mortg. Corp., 434 F.3d 948 (7th Cir. 2006)).  The Ninth Circuit then analyzed FACTA to determine whether denial of class certification on excessive aggregated damages grounds would be consistent with congressional intent.  Bateman, 623 F.3d at 716-21.  The court noted that Congress, despite being aware of the availability of the class action form, did not cap or otherwise limit damages that could be obtained in class actions, as it had for other statutes.  Id. at 718, 720.  The court reasoned Congress had decided that the penalties it set served compensatory and deterrence functions and were proportionate to the prohibited conduct.  Id. at 719.  The court then stated that this "proportionality does not change as more plaintiffs seek relief" and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

concluded that it was "not appropriate to use procedural devices to undermine laws of which a judge disapproves." Id. (citing Murray, 434 F.3d at 954); see also In re Napster, Inc. Copyright Litig., No. C MDL-00-1369 MHP, 2005 WL 1287611, at *11 (N.D. Cal. June 1, 2005) ("[T]he conclusion that class action treatment might somehow influence the proportionality of a statutory damages award is logically flawed."). Accordingly, the unanimous panel held that the district court had abused its discretion by "considering the proportionality of the potential liability to the actual harm alleged in its Rule 23(b)(3) superiority analysis." Bateman, 623 F.3d at 721.

Here, the Legislature evidently decided that minimum damages of $5,000 per violation serve CIPA's purposes and are proportional to the harm caused by CIPA violations. Plaintiffs' action is not the first class action to be filed under § 637.2, and the Legislature could have acted to limit damages in response to any concerns about the liability sought in previous class actions. Cf. Agne v. Papa John's Int'l, Inc., 286 F.R.D. 559, 572 (W.D. Wash. 2012) (concluding that Bateman's reasoning "applies with equal force" to a putative class action seeking statutory damages under the Telephone Consumer Protection Act). Moreover, for reasons more fully explained in the order denying Omni's motion for summary judgment, issues of excessive damages are better addressed at a later stage of the litigation. See Murray, 434 F.3d at 954 ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified."). Finally, the Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.

Therefore, the Court finds that plaintiffs have satisfied their burden of showing superiority.

**V.     CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification is GRANTED. The following class is certified:

All individuals who, between March 15, 2012 and March 22, 2013, inclusive, while physically present in California, participated in a telephone call with a live representative of Omni that was: (1) placed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-cv-02468-CAS(MANx) | Date | September 8, 2014 |
|----------|-------------------------|------|-------------------|
| Title | STEVEN ADES & HART WOOLERY v. OMNI HOTELS MANAGEMENT CORPORATION, ET AL. | | |

to one of the following Omni numbers: (888) 444-6664, (800) 843-6664, (877) 440-6664, (800) 788-6664, or (800) 809-6664; (2) made from a telephone number that includes a California area code (*i.e.*, 209, 213, 310, 323, 408, 415, 424, 442, 510, 530, 559, 562, 619, 626, 650, 657, 661, 669, 707, 714, 747, 760, 805, 818, 831, 858, 909, 916, 925, 949, or 951); and (3) transmitted via cellular telephone on the network of AT&T, Verizon Wireless, or Sprint.  The class excludes all employees of defendant and plaintiffs' counsel and their employees.

The Court appoints as class counsel the Law Officse of Zev B. Zysman, A Professional Corporation, and Dostart Clapp & Coveney, LLP.

IT IS SO ORDERED.

|  | 00 | : | 16 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |