UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                "O"

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| James Hannink<br>James Clapp<br>Zev Zysman | Angela Agrusa |

**Proceedings:**   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

## I.   INTRODUCTION

Plaintiffs Steven Ades ("Ades") and Hart Woolery ("Woolery") filed the instant putative class action on March 15, 2013 in Los Angeles County Superior Court. Defendant in this action is Omni Hotels Management Corporation ("Omni"). Omni removed the case to this Court based on diversity of citizenship on April 8, 2013. Dkt. #1. Plaintiffs have since sought to substitute Jonathan Murphy ("Murphy") for Woolery as class representative. Dkt. #55, 59.

On April 29, 2013, plaintiffs filed the First Amended Complaint ("FAC"). The FAC asserts claims for relief pursuant to the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 et seq. In brief, these claims assert that plaintiffs called Omni's toll-free telephone numbers and provided Omni representatives with personal information. FAC ¶¶ 16 – 17. Plaintiffs allege that when they placed their calls to Omni's toll-free telephone numbers, they were not apprised that the call might be recorded. Id. Plaintiffs further allege that Omni has a company-wide policy of recording inbound telephone conversations with consumers without seeking permission or informing consumers about the monitoring. Id. ¶¶ 18 – 19.

Omni filed a motion for summary judgment on July 30, 2014, Dkt. #63, and a corrected memorandum of points and authorities in support thereof on August 1, 2014,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

Dkt. #65.  Plaintiffs filed an opposition on August 18, 2014.  Dkt. #67.  Omni replied on August 28, 2014.  Dkt. #72.  The parties appeared at oral argument on September 8, 2014.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND[1]

Plaintiffs brought this suit on behalf of themselves and "[a]ll individuals who, between March 15, 2012 and March 22, 2013, inclusive (the 'Class Period'), while physically present in California, participated in a telephone call with a live representative of Omni" that was placed to one of several Omni toll-free numbers, made from a telephone number with a California area code, and transmitted via the AT&T, Verizon Wireless, or Sprint cellular telephone networks.  Dkt. #59.  Plaintiffs contend that they called Omni's toll-free phone number and, without being warned that their calls were being recorded, provided Omni representatives with personal information including their names, phone numbers, e-mail addresses, and credit card numbers and expiration dates.  FAC ¶¶ 16-17.  Plaintiffs allege that unwarned and unconsented recording and monitoring of inbound calls pursuant to Omni company policy violated § 632.7 of CIPA, entitling them to statutory damages.  Id. ¶¶ 31-46.  The calls at issue were placed to an Omni call center located in Omaha, Nebraska.  Defendant's Statement of Uncontroverted Facts ("DSUF") ¶¶ 1-2; Plaintiff's Statement of Disputes of Material Fact ("PSDMF") ¶¶ 1-2.

Omni states that all relevant incoming calls were recorded solely for quality assurance purposes.  DSUF ¶¶ 2, 4.  While disputing that this is relevant to the motion for summary judgment, plaintiffs cite evidence that the recordings were also made so that Omni personnel could consult them in the event of a dispute between Omni and a customer.  PSDMF ¶¶ 2 ,4.  Omni contends that, at all times relevant to this motion, it neither had nor has the ability to "identify an incoming cellular caller's location or state residency."  DSUF ¶ 5.  Plaintiff denies this, and argues that Omni could identify the origin of calls by (1) retaining a "location information services company to provide Omni with real-time data . . . indicating the originating cell tower location; (2) utilizing an

---

[1]The facts set forth in this section are not all undisputed and are provided for background purposes only.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA     **"O"**

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | | Date | September 8, 2014 |
|---|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | | |

"Integrated Voice Response" system that would ask callers to indicate by pressing a keypad button whether they were calling from California; (3) instructing its agents to ask whether customers are calling from California; or (4) using the caller's area code as a "reasonable proxy for geographic location." PSDMF ¶¶ 5, 6. Since the filing of this lawsuit, Omni has implemented an automated notification stating that calls to the Omaha call center may be recorded. PSDMF ¶ 13.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

Omni advances five arguments in support of its motion.  First, it argues that Nebraska law, not California law, governs Omni's conduct.  Second, it maintains that if § 632.7 is imposed on Omni's national call center as plaintiffs urge, it would violate the dormant Commerce Clause of the federal Constitution.  Third, Omni contends that the statutory damages sought by plaintiffs violate the Excessive Fines Clause of the federal Constitution and the due process guarantees of the California and federal constitutions. Fourth, it argues that § 632.7 does not apply to call participants.  Finally, Omni denies that plaintiffs have been "injured" as required to bring a damages claim under § 632.7. Each argument is addressed in turn.

### A.   Choice of Law

"Federal courts sitting in diversity jurisdiction look to the law of the forum state in choice-of-law determinations."  Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005).  California applies a three-step "government interest" test to choice-of-law issues, which the state's Supreme Court has articulated as follows:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    **"O"**

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107-08 (1996) (internal quotation marks omitted).  Omni makes two arguments concerning the applicable law.

1.      Difference Between California and Nebraska Law

First, Omni argues that the relevant California and Nebraska laws do not differ because both states exempt service monitoring from the applicable privacy statutes.  Therefore, Omni contends, the Court need not advance past the first step of the government interest analysis.

When construing a state statute, federal courts apply state law of statutory construction.  Bass v. County of Butte, 458 F.3d 978, 981 (9th Cir. 2006).  Under California law, a court's "fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose."  People v. Murphy, 25 Cal. 4th 136, 142 (2001).  This task begins with the plain meaning of the statutory text considered in the context of "the entire substance of the statute in order to determine the scope and purpose of the provision."  Id.  Legislative history should only be considered where the statutory text is ambiguous.  Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc., 133 Cal. App. 4th 26, 29 (2005) ("Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law.  In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning.  If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs.").  Additionally, where consideration of legislative history is appropriate, "legislative history must shed light on the collegial view of the Legislature *as a whole*."  Id. at 30 (emphasis in original).

In support of its contention that the two states exempt service monitoring, Omni cites passages from CIPA's legislative history and changes to the California Public Utilities Commission's ("the PUC") regulation of the telephone industry.  Most of Omni's arguments and supporting citations were raised on Omni's motion to dismiss, Dkt. #12, as set forth and rejected in the Court's prior order, Dkt. #17.  That order, however, reserved the question of the "applicability and scope of the Public Utility Exemption" that Omni claims applies.  Id. at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

To its arguments raised on the motion to dismiss, Omni adds more detail regarding the PUC's regulation of the telephone industry.  Under General Order 107-B, the PUC formerly required telephone utilities to file tariffs setting conditions for use of its networks by companies that provided their own terminal equipment and monitored or recorded conversations between their employees and customers.[2]  Def.'s Request for Judicial Notice Ex. F at 12.  Omni reasons that because CIPA exempts from liability the use of "instruments, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility," Cal. Pen. Code § 632.7(b)(2),  service observing was excluded from CIPA's coverage by the "public utility exception."  The PUC recently began allowing utility companies to "de-tariff" so that they would no longer have to file tariffs, including those required under General Order 107-B.  Omni argues that the PUC's relaxation of service reporting requirements "cannot rewrite CIPA and turn service observing from an honored practice into a crime."[3]  Mem. Supp. Mot. Summ. J. at 5.

Omni does not claim that any recordings made during the Class Period were literally made on equipment "furnished and used pursuant to the tariffs of a public utility."  Cal. Pen. Code § 632.7(b)(2).  The text of § 632.7(b)(2) suggests that the public utilities exception itself does not apply unless this condition is met; moreover, the California Supreme Court has declined to apply the exception where "there indeed was no tariff" applicable "at the time of the conduct alleged."  Ribas v. Clark, 38 Cal. 3d 355, 362 (1985); see also Bales v. Sierra Trading Post, Inc., No. 13-cv-1894 JM(KSC), 2013

---

[2]A "tariff" filed with the PUC "consists of schedules showing all rates, tolls, rentals, charges, and classifications collected or enforced, or to be collected or enforced, together with all rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service."  Cal. Pub. Util. Code § 489.

[3]However, adjacent provisions of the same PUC order cited by Omni state that customers who provide their own terminal equipment must provide notice of any monitoring or recording.  Def.'s Request for Judicial Notice Ex. F at 12.  This order explained that the tariff conditions for such companies were intended "to assure the same degree of privacy" for these telephone conversations.  Id.  Similarly, all of the no-longer-filed carrier tariffs cited by Omni included provisions requiring notice of recording or monitoring.  See id. Ex. G at 3; id. Ex. H at 4; id. Ex. I at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

U.S. Dist. LEXIS 170443, at *11 (S.D. Cal. Dec. 3, 2013) (denying a motion to dismiss on public utility exception grounds where the defendant could not proffer that its recording equipment was furnished and used pursuant to a published tariff).

Rather, Omni argues that because the PUC once regulated monitoring and recording of the kind at issue here, § 632.7 should be read as if it never applied to service monitoring. Most courts considering § 632.7 or the identical exception in § 632(e), however, have rejected this argument. See, e.g., Kight v. CashCall, Inc., 200 Cal. App. 4th 1377, 1391 (2011) (holding that § 632 "contains no exceptions applicable when a business monitors a telephone conversation even if the monitoring is for a legitimate business purpose"); Bales, 2013 U.S. Dist. LEXIS 170443, at *11 (declining to read a "service-observing" exception into § 632(e)); Nader v. Capital One Bank (USA), N.A., cv-12-1265-DSF (RZx), slip op. at 5-6 (C.D. Cal. June 11, 2013) (deeming "meritless" a similar argument for a customer service exemption); Dake v. Receivables Performance Mgmt., LLC, No. 12-cv-1680-VAP (SPx), 2013 U.S. Dist. LEXIS 160341, at *13 (C.D. Cal. April 16, 2013) ("Neither Section 632 nor 632.7 contains an exception for service monitoring. The language of these sections is unambiguous."); Knell v. FIA Card Servs., N.A., No. 12-cv-0426-AJB (WVG), 2013 U.S. Dist. LEXIS 187551, at *23 (S.D. Cal. Feb. 21, 2013) ("Section 632(e) does not create a 'service-observing exemption in its unambiguous provisions and, thus, the Court declines to create one based upon the statute's legislative history."); Zephyr v. Saxon Mortg. Servs., 873 F. Supp. 2d 1223, 1231 (E.D. Cal. 2012) ("[B]oth 632 and 632.7 are unambiguous and broad in the scope of their protection: together[,] they prohibit '[e]very person' from recording any confidential communication, including telephone calls. . . . If there was any doubt about whether the statute clearly and unambiguously covered [business telephone monitoring], the Kearney decision dispelled it.").

Omni attempts to ignore authorities rejecting a service monitoring exception by reasoning that "the courts that have actually addressed CIPA's legislative history have concluded that CIPA does not apply to service observing." Mem. Supp. Mot. Summ. J. at 6. But because the statute's meaning is plain and unambiguous, examination of the legislative history is improper. See Kaufmann, 133 Cal. App. 4th at 29 ("If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs."). Omni also attempts to cast doubt on plaintiffs' cited cases because they were decided before the recent opinion of the "*only* Ninth Circuit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

jurist to consider the import of the Public Utility Exemption."  Mem. Supp. Mot. Summ. J. at 6 (emphasis in original) (citing Young v. Hilton Worldwide, Inc., No. cv-12-56189, 2014 WL 1087777 (9th Cir. Mar. 20, 2014) (Motz, J., dissenting)).  Although supportive of Omni's position, this dissenting opinion of a senior district judge sitting by designation does not persuade the Court to ignore the weight of authority on this point.

Omni cites some cases supporting a service monitoring exemption; however, the Court finds them less persuasive than those discussed above.  The court in Shin v. Digi-Key Corp., No. cv-12-5415 PA (JCGx), 2012 WL 5503847, at *3 (C.D. Cal. Sep. 17, 2012), for example, mostly based its ruling on the ground that the plaintiff's call was not a "confidential communication" pursuant to § 632, a consideration not applicable with regard to § 632.7.[4]  Moreover, in deciding that legislative history "further supported" its holding, the Shin court did not have the benefit of the later-decided cases cited above. The principal case relied upon by the Shin court was Sajfr v. BBG Communications, Inc., No. 10-cv-2341 AJB (NLS), 2012 WL 398991 (S.D. Cal. Jan. 10, 2012).  In that case, the district court determined that it lacked subject matter jurisdiction because no conduct was alleged to have taken place in California, and added as an "additional argument" that "the legislative history of § 632 reflects that it was not intended to prohibit 'service-observing' because the legislature deemed that practice to be in the public's best interest."  Id. at *5. The same district judge to decide Sajfr, however, found in a later case that reliance on the same "legislative history [was] misplaced as the statutory language is clear and unambiguous," and explicitly stated that § 632 "does not create a 'service-observing' exemption."  Knell, 2013 U.S. Dist. LEXIS 187551, at *23.[5]

_____

[4]See Brown v. Defender Security Comp., No. cv-12-7319-CAS (PJWx), 2012 WL 5308964 (C.D. Cal. Oct. 22, 2012) (finding that § 632.7, unlike § 632, is not limited to confidential communications); see also Flanagan v. Flanagan, 27 Cal. 4th 766, 771 n.2 (2002) ("Section 632.7 . . . . applies to all communications, not just confidential communications.").

[5]Omni also cites two Los Angeles County Superior Court orders finding a service monitoring exemption, only one of which is a written opinion.  See Mem. Supp. Summ. J. at 7.  The Superior Court has reached the opposite conclusion in a pair of recent opinions. See Newport v. BPG Home Warranty Co., No. BC488142, slip op. at 9 (L.A. Cnty. Sup.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

Based on the foregoing, the Court finds (1) that the statutory public utility exemption does not apply to Omni's conduct and (2) that CIPA does not contain a broad exception for routine service monitoring.  Accordingly, the Court rejects Omni's argument that CIPA does not differ from Nebraska law in relevant respects.

2.      Remaining Government Interest Analysis

Omni argues in the alternative that if there is a conflict between California and Nebraska law–that is, if § 632.7 makes illegal non-consensual recordings made for service monitoring purposes–Nebraska's interests in applying its law outweigh those of California.  Nebraska law permits employers to "intercept, disclose, or use" communications related to "any activity which is a necessary incident to the rendition of . . . [its] service or to the protection of the rights or property of the carrier or provider of such communication services."  Neb. Rev. Stat. § 86-920(2)(a).  Based on this provision, Omni contends that Nebraska favors allowing businesses to monitor their employees, as to provide better customer service, over protecting consumer privacy directly.  Omni argues that the difference in law reflects Nebraska's attempt to make its state more business-friendly.  Moreover, Omni argues that Nebraska law applies because the alleged wrong took place in Nebraska, the location of "the last event necessary to make the actor liable."  Mem. Supp. Summ. J. at 9-10 (citing <u>Mazza v. Am. Honda Motor Co.</u>, 666 F.3d 581, 593 (9th Cir. 2012).  Finally–and somewhat in tension with Omni's premise that, for purposes of this part of the conflict analysis, there is an "irreconcilable conflict" between the two laws–Omni argues that application of Nebraska law would not impair California's interests because California has expressly embraced service observing as an exception from CIPA.

Ct. May 8, 2013) (Pl.'s Request Judicial Notice Ex. 2) ("Defendant's attempt to shoehorn its alleged unregulated practice of audio recording into the framework of an exception that was clearly grounded in a heavily regulated world of yesteryear is unavailing."); <u>Zamar v. Mercury Ins. Co.</u>, No. BC469266, slip op. at 5 (L.A. Cnty. Sup. Ct., Apr. 17, 2013) (Pl.'s Request Judicial Notice Ex.1) ("The legislative history, however, is irrelevant here.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    "O"

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

Plaintiffs first respond that <u>Kearney</u>, which involved CIPA and Georgia's single-consent recording law, is dispositive of the choice of law issue.  Second, they dispute Omni's characterization of Nebraska as a "zero-consent" state as regards service monitoring, pointing out that the statute cited by Omni provides: "employers and providers shall not utilize service observing or random monitoring except for mechanical, service quality, or performance control checks as long as reasonable notice of the policy of random monitoring is provided to their employees."  Neb. Rev. Stat. § 86-290(2)(a). Next, they argue that California's interests in its residents' privacy would be significantly impaired by the application of Nebraska law because Californians' privacy would only be protected when they placed calls to businesses also located in California.  Moreover, they argue that allowing out-of-state companies (but not California companies) to utilize undisclosed recordings would advantage out-of-state companies at in-state companies' and California residents' expense.  Finally, again citing <u>Kearney</u>, 39 Cal. 4th at 126-27, plaintiffs argue that Nebraska's interests would not be significantly impaired by the application of California law because California is more protective of privacy interests than Nebraska and neither Nebraska law nor cited business reasons require the secret recording of customer service calls.

In <u>Kearney</u>, plaintiffs alleged that Atlanta-based employees of a nationwide brokerage firm had repeatedly "recorded telephone conversations with California clients without the clients' knowledge or consent."  39 Cal. 4th at 99.  The California Supreme Court first held that a true conflict existed between§ 632 and Georgia privacy law.  <u>Id.</u> at 100.  The court then found that "the failure to apply California law in this context would impair California's interest in protecting the degree of privacy afforded to California residents by California law more severely than the application of California law would impair any interests of the State of Georgia."  <u>Id.</u>  The court reasoned that allowing the many businesses that operate in both California and single-consent states to record conversations without California consumers' knowledge or consent would "significantly impair the privacy interests guaranteed by California law" and could place California businesses "at an unfair competitive advantage vis-à-vis their out-of-state counterparts." <u>Id.</u>  The court found California's interest to be strong because protecting California residents from secret recording was "one of the principal purposes" underlying CIPA, and that subsequent modifications to CIPA demonstrated the Legislature's continued concern with the same issue.  <u>See id.</u> at 124-25.  The court further reasoned that the impact on Georgia interests would be minimal because privacy interests protected by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title    | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

Georgia law would not be adversely affected, the ruling would affect only calls made to or received from California clients, and the affected companies could still record all such calls so long as they informed consumers at the outset.  See id. at 100.  Granting deference to companies that had reasonably relied on Georgia law, the Supreme Court declined to impose damages for past conduct in that case, but noted that its ruling should put "out-of-state companies that do business in California . . . on notice that, with regard to future conduct, they are subject to California law with regard to the recording of telephone conversations made to or received from California."  Id. at 130-31.

The same strong California interests apply here as in Kearney.  With regard to Nebraska, the relevant statute does appear to give businesses greater latitude to record conversations of their employees than do some other single-consent states.  See 5 Leslie T. Thornton & Edward R. McNicholas, Successful Partnering Between Inside and Outside Counsel § 82:55 n.2 ("At least two states . . . require the provision of notice before employers conduct electronic monitoring.  Nebraska has taken the contrasting position and enacted an employer friendly law that exempts business from state wiretap statutes and gives employers the right to intercept, disclose and use e-mails in the ordinary course of business.").  Nevertheless, the statute still requires notice to be given to employees when a policy of "service observing or random monitoring" is to be used.  Neb. Rev. Stat. § 86-290(2)(a).  In fact, Omni, which states that it "set up the Nebraska Call Center to comply with Nebraska law," DSUF ¶ 3, requires "each Reservation Agent [to] sign[] a document confirming their understanding that Omni may record incoming calls to them, in compliance with Nebraska law," id. ¶ 4.  See also Korner Decl. ¶ 2 ("Reservation Agents are informed that some of their calls are recorded for purposes of employee monitoring, *as Nebraska law requires*." (emphasis added)).[6]  As in Kearney,

_____

[6]In reply, Omni dismisses these required warnings as "periodic, generic notice" that do not undermine the differences between Nebraska law and the Georgia law considered in Kearney.  Because the required notice ensures that each Omni employee participating in a recorded call is aware that her calls with customers are being recorded, the Court does not find the fact that the employees need not consent anew at the outset of each call determinative.  In this regard, the Court notes that one of Omni's primary arguments in opposition to class certification rests upon the proposition that consent can be implied from a general awareness that a call might be recorded, even without actual prior notice at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

CIPA would only control calls from Californians, and companies would still be able to record calls from California so long as they notified callers at the outset. To the argument that as a practical matter the application of California law would require Omni to change its policies for all incoming calls, the Court finds that Plaintiffs have raised genuine issues of material fact as to the feasibility of determining incoming callers' location and state of residency. See PSDMF ¶ 5. Moreover, Omni's own proffered evidence that being informed of recording at the beginning of a call would not change callers' behavior, see DSUF ¶¶ 9-10, undermines their contention that Nebraska's pro-business interests would be severely hampered by application of CIPA. Overall, the Court finds that the interests of California in the privacy of its consumers would be affected more by the application of Nebraska law than Nebraska's pro-business interests would be affected by the application of California law.

The Court does not find <u>Mazza</u> to be as helpful to Omni as it claims. That case dealt with a putative <u>nationwide</u> class of consumers from 44 states, and the Ninth Circuit noted each state's interest in "having its law applied to its resident claimants" and the importance of federalism concerns in "<u>interstate</u> class actions." 666 F.3d at 592-93 (internal quotation marks omitted) (emphasis added). Here, the putative class is limited to California consumers. Moreover, in California, the "law of the place of the wrong" rule has been subordinated to broader government interest test concerns for decades. See <u>Kearney</u>, 39 Cal. 4th at 108 (explaining that in <u>Reich v. Purcell</u>, 67 Cal. 2d 551, 553-55 (1967), the California Supreme Court "rejected the prior 'law of the place of the wrong' rule as the appropriate choice-of-law analysis, and instead adopted in its place the governmental interest analysis."). Even if the "place of the wrong" were determinative, the California Supreme Court has stated in interpreting CIPA that a telephone conversation between a California resident and an out-of-state business is a "multistate event in which a crucial element–the confidential communication by the California resident–occurred *in California*." <u>Id.</u> at 119 (emphasis in original); <u>see id.</u> ("A person who secretly and intentionally records such a conversation from outside the state effectively acts within California in the same way a person effectively acts within the state by, for example, intentionally shooting a person in California from across the California-Nevada border.")

---

the outset of the particular call.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

The Court does not dispute the principle that "each state has an interest in setting the appropriate level of liability for companies conducting business within its territory." Mazza, 666 F.3d at 592 (citing McCann v. Foster Wheeler LLC, 38 Cal. 4th 68, 91 (2010)). But given California's clearly expressed interest in protecting its residents from secretly recorded phone calls, which the California Supreme Court has found would be seriously impaired by the application of less protective privacy law, and the less clear showing that Nebraska's interests would be severely impaired by application of California law, the Court finds Kearney's choice-of-law analysis controlling, and California law applicable to this case.

**B.     Dormant Commerce Clause**

Omni contends that applying § 632.7 as plaintiffs urge would violate the dormant Commerce Clause of the United States Constitution.  "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." South-Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984).  "This limitation on state power has come to be known as the dormant Commerce Clause." Nat'l Ass'n of Optometrists & Opticians v. Harris (Nat'l Ass'n of Optometrists II), 682 F.3d 1144, 1147 (9th Cir. 2012).  Modern dormant Commerce Clause jurisprudence "is driven by concern about economic protectionism–that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."  Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 337-38 (2008).  Thus, "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the states."  Nat'l Ass'n of Optometrists II, 682 F.3d at 1148 (quoting Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 371 (1976)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

Courts evaluating dormant Commerce Clause claims conduct two inquiries.[7] First, the court "determine[s] whether the statute directly burdens interstate commerce or discriminates against out-of-state interests," in which case the law is "virtually *per se* invalid and the [c]ourt applies the strictest scrutiny."  LensCrafters, Inc. v. Robinson, 403 F.3d 798, 802 (6th Cir. 2005) (internal quotation marks omitted); see also Nat'l Ass'n of Optometrists & Opticians v. Brown (Nat'l Ass'n of Optometrists I), 567 F.3d 521, 524 (9th Cir. 2009) ("Laws that discriminate against out-of-state entities are subject to strict scrutiny.").  "A statutory scheme can discriminate against out-of-state interests in three different ways: (a) facially, (b) purposefully, or (c) in practical effect."  Nat'l Ass'n of Optometrists I, 567 F.3d at 525 (internal quotation marks omitted).  Additionally, a "statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority."  Healy v. Beer Inst., 491 U.S. 324, 336 (1989); see also Edgar v. MITE Corp., 457 U.S. 624, 640 (1982) (explaining that the Clause "permits only incidental regulation of interstate commerce by the States; direct regulation is prohibited." (emphasis in original)). But if the law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).  The party challenging the statute "bears the burden of proof in establishing the excessive burden in relation to the local benefits." Nat'l Ass'n of Optometrists I, 567 F.3d at 528.

1.      Per Se Violation of the Dormant Commerce Clause

Omni first contends that application of § 632.7 to these facts would effect direct regulation of extraterritorial commerce, constituting a per se violation of the dormant

---

[7]A threshold inquiry is whether the Commerce Clause applies at all.  The Clause is implicated whenever the regulated activity has a "'substantial effect' on interstate commerce such that Congress could regulate the activity."  Conservation Force, Inc. v. Manning, 301 F.3d 985, 993 (9th Cir. 2002) (quoting Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 574 (1997)).  This requirement is clearly met here because the conduct at issue involves telephone signals, a channel of interstate commerce that Congress can and does regulate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

Commerce Clause.  Omni argues that the fact that § 632.7 "may not facially or even purposefully control out of state interests is not determinative."  Mot. Supp. Summ. J. at 12 (citing Healy, 491 U.S. at 336).  In this regard, Omni asserts that because the portability of mobile phone numbers makes it unfeasible to distinguish between Californian and non-Californian calls, compliance with § 632.7 would force Omni to warn all callers, even those from single-consent states, that they could be recorded.  Accordingly, Omni argues that this case is like several others in which courts struck down statutes that would have effectively projected state legislation to wholly extraterritorial activity.

Plaintiffs respond that there is no direct extraterritorial regulation here because the telephone calls at issue do not take place wholly outside California.  They further argue that § 632.7 does not discriminate in any way because it treats out-of-state and in-state businesses the same: both must obtain consent before recording calls from California customers.  Plaintiffs assert that it would be possible for Omni to determine the location of cell phone callers, although Omni responds that each method suggested for doing so impermissibly burdens interstate commerce.  Furthermore, plaintiffs argue that the fact that a business may be incentivized to change its practices nationwide to comply with the regulatory policy of one state does not amount to a Commerce Clause violation.

The Court agrees with plaintiffs that this case does not merit strict scrutiny under the dormant Commerce Clause.  First, § 632.7 does not discriminate facially, purposefully, or practically against out-of-state commerce.  Omni appears to concede that the statute does not discriminate facially or purposefully, and there is case law to that effect.  See Zephyr v. Saxon Mortg. Servs., Inc., 873 F. Supp. 2d 1223, 1231 (E.D. Cal. 2012) ("[T]he purpose of California's Privacy Act does not appear to be to regulate out-of-state commerce or conduct, but to protect California residents from having their conversations recorded by either instate or out-of-state callers without all parties' consent.").  Nor does the statute have a discriminatory effect.  To make this determination "it is necessary to compare [Omni] with a similarly situated in-state entity."  Nat'l Ass'n of Optometrists I, 567 F.3d at 525.  § 632.7 does not place any burdens on out-of-state businesses that do business in California that the law does not place on in-state businesses.  See Zephyr, 873 F. Supp. 2d at 1231 ("There does not seem to be any differential treatment of in-state versus out-of-state callers: §§ 632 and 632.7 apply equally to in-state and inter-state calls that are recorded."); Nader v. Capital One Bank

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

(USA), N.A., cv-12-1265-DSF (RZx), slip op. at 5 n.6 (C.D. Cal. June 11, 2013) (finding that § 632 "operates even-handedly" with regard to in- and out-of-state businesses).

Nor does § 632.7 directly regulate out-of-state commerce in violation of what has been called the "extraterritoriality doctrine." See Kearney, 39 Cal. 4th at 106-07 ("[T]he occurrences here at issue quite clearly did not take place 'wholly outside [California's] borders." (brackets in original)).  As the Ninth Circuit recently explained, "In the modern era, the Supreme Court has rarely held that statutes violate the extraterritoriality doctrine. The two most prominent cases where a violation did occur both involved similar price-affirmation statutes."  Rocky Mountain Farmers Union v. Corey, 730 F.3d 1070, 1101 (9th Cir. 2013) (discussing Healy v. Beer Inst., Inc., 491 U.S. 324 (1989)).  The Ninth Circuit has cautioned that Healy, cited by Omni in support of its extraterritoriality argument, is "not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices."  Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 951 (9th Cir. 2013) (internal quotation marks and brackets omitted); see also Healy, 491 U.S. at 336 ("[S]pecifically, a state may not nadopt legislation that has the practical effect of establishing a scale of prices for use in other states." (internal quotation marks omitted)).[8]  The Ninth Circuit has also distinguished invalid regulations that "directly regulate the actions of parties located in other states" from valid regulations of "relationships in which at least one party is located in California."  Gravquick A/S v. Trimble Navigation Intern. Ltd., 323 F.3d 1219, 1224 (9th Cir. 2003).  In Gravquick, the court reasoned that a California law governing business relations among the supply chains of agricultural, utility, and industrial equipment did not violate the dormant Commerce Clause as applied to dealers located outside of California because by contracting with parties located in California, the dealers consented to being governed by California law.  See id.  Here, as explained above, California law applies to Omni's telephone conversations with Californians, and out-of-state companies that conduct telephone business with California consumers have been on notice of this at least since Kearney was decided in 2006.  This case is therefore different from cases cited by Omni in which a state "projected its legislation" into other states to affect conduct with no California nexus.  See, e.g., National Collegiate Athletic

---

[8]Brown-Forman Distillers Corp. V. New York State Liquor Authority, 476 U.S. 573 (1986), also cited by Omni, similarly involved a price affirmation statute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                "O"

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title    | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

<u>Association v. Miller</u>, 10 F.3d 633, 638 (9th Cir. 1993) (striking down a law "directed at interstate commerce and only interstate commerce" because it regulated "only interstate organizations, <i>i.e.</i>, national collegiate athletic associations which have member institutions in 40 or more states").

Turning to the crux of Omni's argument, Omni's claims that application of § 632.7 forces Omni as a practical matter to change its handling of callers from every state are insufficient to show a constitutional violation at this stage of the litigation. The calls at issue involved telephonic connections between California and Nebraska, and it was Californians who allegedly had their conversations recorded without forewarning. <u>See</u> <u>Zephyr</u>, 873 F. Supp. 2d at 1230 ("California §§ 632 and 632.7 do not regulate conduct that occurs in entirely another state as Saxon's calls are made to California residents' telephones and the conversations are made with California residents."). Although the portability of mobile phone numbers may make it difficult to know with certainty whether a caller is indeed calling from or residing in California, viewing the evidence in the light most favorable to plaintiffs as the Court is required to on a motion for summary judgment, there is at least a triable issue of fact as to whether it would be "futile" for Omni to differentiate among Californian and non-Californian callers. <u>See</u> PSDMF ¶ 5.

Moreover, legislation that may cause businesses to decide to conform nationwide conduct to meet the requirements of a given state does not necessarily constitute direct regulation of out-of-state commerce. "Courts have held that when a defendant chooses to manufacture one product for a nationwide market, rather than target its products to comply with state laws, defendant's choice does not implicate the commerce clause." <u>Nat'l Fed'n of the Blind v. Target Corp.</u>, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006); <u>see</u> <u>id.</u> ("[E]ven if [defendant] chooses to change its entire website in order to comply with California law, this does not mean that California is regulating out-of-state conduct."). The Ninth Circuit has recently held that "regulation with reference to local harms" does not constitute extraterritorial regulation under the Commerce Clause merely because that regulation creates incentives for businesses to alter out-of-state activity. <u>Rocky Mountain</u> <u>Farmers Union</u>, 730 F.3d at 1101-06 (holding that California fuel standards taking into account "lifecycle" emissions did not "control conduct wholly outside the state" despite arguments that the standards forced plaintiffs to conform out-of-state conduct to California law). Similarly, § 632.7 regulates only calls with a nexus to California and has the purpose of preventing privacy harms to Californians, even if it might create

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

incentives for Omni to alter its behavior nationwide.  Cf. Kearney, 39 Cal. 4th at 10-054 ("[A] company that conducts business in numerous states ordinarily is required to make itself aware of and comply with the law of a state in which it chooses to do business. . . . [A] state generally does not exceed its constitutional authority when it applies a law in such a setting, even if the law may implicate some action . . . that occurs outside the state.").[9]  That Omni may find it more convenient to warn all callers that their calls may be recorded, rather than attempt to differentiate between callers from single-consent and dual-consent states, does not create a constitutional violation.  Cf. Ferguson v. Friendfinders, Inc., 94 Cal. App. 4th 1255, 1265 (stating that a company's "business decision" to comply with the statute all the time to avoid a determination of whether the company is corresponding with a California resident in each instance "does not establish that [the statute] controls conduct occurring wholly outside California").  To the extent that § 632.7 affects out-of-state commerce, such effects are "incidental" and do not constitute direct regulation meriting strict scrutiny under the dormant Commerce Clause.

2.      Undue Burden on Interstate Commerce

Omni argues in the alternative the requested application of § 632.7 would impose incidental burdens on interstate commerce that clearly outweigh the local benefits secured.  Omni contends that compliance with § 632.7 "provides no real benefit whatsoever" for several reasons.  First, Omni avers that many California callers assume their calls to hotels are recorded even absent a warning.  Second, Omni disputes that Omni's recording of telephone calls without a warning affected plaintiffs in any way.  Third, Omni argues that § 632.7 does not protect Californians' confidential communications.  Fourth, Omni contends that the statute does not benefit consumers whose calls were recorded for service observing purposes as opposed to intercepted by a

---

[9]Although the Kearney court made this determination in the context of choice of law and due process arguments, the Court finds the facts and legal issues similar enough to make the court's reasoning relevant and persuasive.  See Donald H. Regan, Siamese Essays: (1) CTS Corp. V. Dynamics Corp. of America and Dormant Commerce Clause Doctrine; (II) Extraterritorial State Legislation, 85 Mich. L. Rev. 1865, 1884-85 (1987) (noting that courts deciding conflict-of-laws cases have addressed extraterritoriality issues similar to those treated under the dormant Commerce Clause).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

third party.  Conversely, Omni argues, the "burdens on interstate commerce are extraordinary."  Omni cites the potential damages in this case as well as the fact that this lawsuit has already "coerced Omni into warning every caller that he or she may be recorded."

Plaintiffs deny that Omni has shown any burden imposed on it by application of § 632.7.  They point out that, following this lawsuit's filing, Omni added an automated notification of potential recording for each caller, and assert that adding the recording cost Omni only about an hour's worth of employee labor.  PSDMF ¶ 13.  Plaintiffs also deny that Omni has presented evidence that having to inform callers of potential recording has adversely impacted Omni.  On the benefits side of the equation, plaintiffs argue that 632.7 protects strong privacy interests ignored by Omni.

Despite Omni's argument that § 632.7's application to Omni's conduct provides "no real benefit whatsoever," this Court finds persuasive the California Supreme Court's reasoning that refusing to apply the law to similar conduct would "significantly impair the privacy policy guaranteed by California law."  Kearney, 39 Cal. 4th at 100.  Against these real local interests, the Court does not find that Omni has shown clearly excessive burdens on interstate commerce.[10]  As stated above, plaintiffs have at least raised a genuine issue of material fact as to whether Omni could feasibly "comply with California

_____

[10]The Court does not find Omni's citation of several cases involving internet content regulation persuasive as to either the extraterritoriality of or the interstate burden imposed by § 632.7, chiefly because the nature of the internet and the conduct regulated in those cases directly extended the regulation to persons with no connection to the regulating state.  See Mot. Summ. J. at 15, 17-18.  The Court also finds inapposite Consolidated Cigar Corp. v. Reilley, 218 F.3d 30 (1st Cir. 2000), rev'd in part on other grounds sub nom. Lorillard Tobacco Corp. v. Reilly, 533 U.S. 525 (2001).  In that case, the statute imposed liability for advertising without required health warnings in national magazines distributed in Massachusetts, as well as for advertising on the internet that could be "viewed from a terminal" in the state.  Id. at 56.  Therefore, unlike here, the statute directly regulated and placed burdens on conduct outside of the state.  This is very different from Omni's argument that it is easier for Omni to play the same five-second recording for every caller than to determine the origin of each call.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

law without altering its conduct with regard to non-California clients." Kearney, 39 Cal. 4th at 107; Mem. Supp. Mot. Summ. J. at 17; see PSDMF ¶ 5. Even if that were not the case, Omni has not met its burden at this stage of the litigation of proving that the burden of complying with § 632.7 is "clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142.[11]

### C.    Excessive Damages

Omni next argues that the statutory damages sought by plaintiffs are unconstitutional under the Excessive Fines Clause, U.S. Const. amend. VIII, and due process principles.

The Excessive Fines Clause is inapplicable where, as here, civil damages are sought in a lawsuit between private parties. United States v. Bajakajian, cited by Omni in support of its argument, explains that "fine" as used in the Eighth Amendment means "a payment *to a sovereign* as punishment for some offense." 524 U.S. 321, 327 (1998) (emphasis added) (quoting Browning-Ferris Indus. Of Vt., Inc. v. Kelco Disposal, 492 U.S. 257, 265 (1989)). An earlier Supreme Court case succinctly states the flaw in Omni's argument: the Eighth Amendment "does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." Browning-Ferris, 492 U.S. at 264. The Browning-Ferris Court explained that its "concerns in applying the Eighth Amendment have been with criminal process and with direct actions initiated by government to inflict punishment." Id. at 260. See also Zomba Enter., Inc. v. Panorama Records, Inc., 491 F.3d 574, 586 (6th Cir. 2007) (citing Bajakajian and Browning-Ferris in rejecting an argument that the Eighth Amendment applied to enhanced statutory damages under the Copyright Act).

At this stage of the litigation, Omni's argument that the statutory damages violate due process must also be rejected. In fact, one of the two opinions Omni cites in support

---

[11]The Court agrees with plaintiffs that the statutory damages sought in this case are a potential penalty for failing to comply with California law, not a burden on interstate commerce resulting from compliance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

of its due process contentions declined at a similar juncture to consider an argument that statutory damages were excessive.  See In re Napster, Inc. Copyright Litig., No. C MDL-00-1369 MHP, 2005 WL 1287611, at *11 (N.D. Cal. June 1, 2005).  On a motion for class certification, that court found that "at this stage of the proceedings, there is simply nothing in the record that would permit the court to apply" the reasonableness guideposts urged by Omni "in an informed manner," and that any inquiry would be "speculative, based on a potential statutory maximum award rather than an actual jury verdict."  Id.; see also Centerline Equip. Corp. v. Banner Personal Serv., Inc., 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) ("It is premature at this [class certification] stage to consider whether any hypothetical [statutory damages] award might be constitutionally excessive."); DirecTV v. Spillman, No. Civ.A.SA-04-82-XR, 2004 WL 1875045, at *4 (W.D. Tex. Aug. 23, 2004) (declining to consider due process objections to potential statutory damages on a motion to dismiss because such an argument was "premature").  Additionally, in tension with Omni's use of the case, In re Napster questioned the notion that statutory damages should be "singled out for heightened scrutiny" under the Due Process Clause.  2005 WL 1287611, at *11; see id. ("[T]he conclusion that class action treatment might somehow influence the proportionality of a statutory damages award is logically flawed.").[12]

---

[12]The Court is not persuaded to consider Omni's arguments at this juncture by Cohorst v. BRE Props., Inc., No. 3:10-cv-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011).  First, that report of a special master reviewed an actual settlement as opposed to a hypothetical maximum damages award.  Second, that report applied Excessive Fines Clause jurisprudence to a statutory damages award in a case between private parties, see id. at *14, despite the U.S. Supreme Court's clear rule that the clause "limit[s] only those fines directly imposed by, and payable to, the government," Browning-Ferris, 492 U.S. at 268.  In doing so, the report relied on a California Supreme Court case that involved civil fines sought by the California Attorney General, a situation that would implicate the Eighth Amendment's concern with proceedings brought by the government.  See generally People ex rel. Lockyer v. R.J. Reynolds Tobacco Co., 37 Cal. 4th 707 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          "O"

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

**D.      § 632.7's Applicability to Call Participants**

Next, Omni argues that § 632.7 does not apply to call participants based on differences between the language in that provision and § 632.  Specifically, § 632 holds liable anyone who "eavesdrops upon or records" a telephone communication, and § 632.7 imposes liability on anyone who "intercepts or receives and records" a cellular telephone call.  Omni first cites general principles of statutory interpretation to argue (1) that "intercepts or receives" would be extraneous if § 632.7 applied to parties, and (2) that the use of "receives" in §§ 632.5 and 632.6 to apply to third parties shows that "receives" should be read to only apply to third parties in § 632.7.  Omni then turns to legislative history it argues "demonstrates that the drafters sought only to fill a perceived gap in the statutory scheme by merely extending sections 632.5 and 632.6, which required malice, to non-malicious third-party recordings."  Mem. Supp. Summ. J. at 21.  Omni also claims that the legislative history and potential "absurd and unfair results" justifies "qualify[ing] the plain meaning" of 632.7.  Id. at 24 (citing Ctr. For Nat'l Policy Review on Race & Urban Issues v. Weinberger, 502 F.2d 370, 374 (D.C. Cir. 1974)).  In response, plaintiffs stress that 632.7 uses the word "receive" in addition to the word "intercept," implying that the words have different meanings.  They also cite recent cases rejecting the construction Omni urges.

The Court agrees with the decisions cited by plaintiff, and finds that § 632.7 prevents a party to a cellular telephone conversation from recording it without the consent of all parties to the conversation.  See Montantes v. Inventure Foods, No. cv-14-1128-MWF (RZx), 2014 WL 3305578, at *2-4 (C.D. Cal. July 2, 2014) ("The text of § 632.7 unambiguously includes a person who 'receives a protected 'communication,' whether or not the communication is received while in transit or at its destination."); Kuschner v. Nationwide Credit, Inc., 256 F.R.D. 684, 688 (E.D. Cal. 2009) (construing § 632.7 to apply to a claim that one party to a telephone conversation had recorded it without the other party's consent).  As this Court has previously stated, this interpretation flows from the clear and unambiguous language of the statute.  Brown v. Defender Sec. Co., No. cv-12-7319-CAS (PJWx), 2012 WL 5308964 (C.D. Cal. Oct. 22, 2012).  Initially, as a matter of common usage, the participants in a conversation "receive" communications from each other. This alone suggests that § 632.7 should not be limited to situations in which unknown third parties record a conversation. Additional support for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    "O"

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|----------|------------------------|------|-------------------|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

the Court's interpretation lies in the fact that the statute uses the terms "receives" and "intercepts" disjunctively, which suggests that these terms are meant to apply to distinct kinds of conduct. Since "intercepts" is most naturally interpreted to refer to conduct whereby an unknown party secretly accesses a conversations, "receives" is naturally read to refer to something other than access to a conversation by an unknown interloper.[13]

### E.    "Injury" Under § 632.7

Finally, Omni contends that plaintiffs cannot sustain an action under § 632.7 because they cannot demonstrate that they have suffered an injury.  Plaintiffs respond that Omni's alleged violation of CIPA is "itself a legally cognizable injury giving rise to the right to recover statutory damages," and that they "are not required to show any financial or other injury."  PSDMF ¶ 10.  Omni argues that plaintiffs' argument relies on a conflation of the terms "injury" and "damages."

The Court concurs with cases cited by plaintiffs finding that, in light of the California legislature's decision to create statutory damages for each violation of CIPA, no separate showing of injury aside from a violation of the privacy rights protected by CIPA is required.  See, e.g., In re Google Inc. Gmail Litig., No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *65-67 (N.D. Cal. Sep. 26, 2013) (rejecting an argument that § 632.7 requires independent injury aside from an invasion of statutory CIPA rights); Lieberman v. KCOP Television, Inc., 110 Cal. App. 4th 156, 167 (2003) ("[A]n actionable violation of section 632 occurs the moment the surreptitious recording is made."); Friddle v. Epstein, 16 Cal. App. 4th 1649, 1661 (1993) (holding that the right to recover statutory damages "accrue[s] at the moment the Privacy Act was violated").  This finding is bolstered by the fact that § 637.2 provides for damages of "the greater of"

---

[13]Because the Court finds the statutory language unambiguous, it does not consider legislative history.  Viceroy Gold Corp. v. Aubry, 75 F.3d 482, 490 (9th Cir.1996); Delaney v. Superior Court, 50 Cal. 3d 785, 798 (Cal.1990).  The Court notes, however, that at least one district court has investigated the legislative history and found, contrary to Omni's assertions, that "[i]nterpreting § 632.7 to only apply to third parties would defeat the Legislature's intent."  Simpson v. Best Western Int'l, Inc., No. 3:12-cv-04672-JCS, 2012 WL 5499928, at *9 (N.D. Cal. Nov. 13, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          **"O"**

### CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-2468-CAS(MANx) | Date | September 8, 2014 |
|---|---|---|---|
| Title | STEVEN ADES, ET AL. v. OMNI HOTELS MANAGEMENT CORP., ET AL. | | |

$5000 or "[t]hree times the amount of actual damages, *if any*, sustained by the plaintiff," and states that it is "not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(a), (c). The Court is not convinced that the Legislature intended to require some showing of injury in addition to a violation of privacy rights under CIPA, but not necessarily including actual damages. Put simply, "[t]he harm consists of the unauthorized recording." California Practice Guide: Civil Procedure Before Trial Claims & Defenses § 4:1690.[14]

## V.     CONCLUSION

For the foregoing reasons, Omni's motion for summary judgment is DENIED.

IT IS SO ORDERED.

|  | 00 | : | 16 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[14]Omni relies heavily on a Superior Court's order in <u>Hopkins v. Healthmarkets</u>, No. BC404133, 2011 WL 7463408 (L.A. Sup. Ct. Nov. 30, 2011). That order did not discuss the cases cited above, or any other case law, with regard to the injury requirement of § 637.2. The Court acknowledges the <u>Hopkins</u> case's support for Omni's position but respectfully disagrees with its conclusion.