1  GLEAM DAVIS (Bar No. 123047)
   AT&T SERVICES LEGAL DEPARTMENT
2  1150 S. Olive Street, Suite 2850
   Los Angeles, California 90015
3  Telephone: 213-743-6710
   Facsimile: 213-748-1284
4  gleam.davis@att.com

5  Attorneys for Defendant
   AT&T MOBILITY SERVICES LLC
6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 | STEVEN ADES AND HART           | CASE NO. 2:13-CV-02468-CAS (MANx)
   | WOOLERY, on behalf of themselves |
12 | and all others similarly situated, |
   |                                | AT&T MOBILITY'S BRIEF
13 |         Plaintiff              | REGARDING THE CUSTOMER-
   |                                | CONSENT REQUIREMENT IN
14 | vs.                            | § 2891 OF CALIFORNIA'S PUBLIC
   |                                | UTILITIES CODE
15 |                                |
   | OMNI HOTELS MANAGEMENT         |
16 | CORPORATION and DOES 1         |
   | through 100, inclusive         |
17 |                                |
   |         Defendants.            |
18

# INTRODUCTION

Plaintiffs allege that Defendant violated their privacy by recording telephone calls without consent. Yet Plaintiffs seek to build their class by demanding that AT&T produce private information about thousands of its telephone customers without consent. That demand may be inconsistent with California's Public Utilities Code, which requires consent to the production of certain private information about telephone customers. AT&T therefore requests that the Court order Plaintiffs to have customer consent to require the production of the information sought here.

# BACKGROUND

In November 2014, Plaintiffs served AT&T with a subpoena for information about some 3,500 of its California customers. (Ex. 1.) Plaintiffs demanded that AT&T produce (1) customer names, (2) customer addresses, (3) a list of Omni telephone numbers that those customers called, and (4) the date, time, duration, and location of those calls. AT&T ultimately believed at the time—in accordance with multiple decisions from federal courts in California—that California's Public Utilities Code did not provide a basis for insisting that Plaintiffs have customer consent to the production of this information. *See Kamalu v. Walmart Stores, Inc.*, No. 1:13–cv–00627–SAB, 2013 WL 4403903, at *6 (E.D. Cal. Aug. 15, 2013) (holding that § 2891 of the Public Utilities Code does not apply to a request for information about AT&T's wireless customers); *McArdle v. AT&T Mobility LLC*, No. C 09-1117 CW (MEJ), 2010 WL 1532334, at *6 (N.D. Cal. April 16, 2010) (same).

Meanwhile, AT&T, T-Mobile, and other providers received a similar subpoena in *Birchmeier v. Caribbean Cruise Line*, a class-action in the Northern District of Illinois. The subpoena sought the names, addresses, and e-mail addresses of customers across the country, including California. (Ex. 2.) On March 20, 2015, relying on § 2891 of California's Public Utilities Code, the court in

1  *Birchmeier* held that T-Mobile should not produce information about its California
2  customers without their consent. *See* Transcript of Proceedings ("Birchmeier
3  Transcript") at 4:4-9:8, No. 12-C-4069, *Birchmeier v. Caribbean Cruise Line, Inc.*
4  (N.D. Ill. March 20, 2015) (Ex. 3). The holding similarly (but not expressly)
5  affects AT&T because it has not yet produced information about its California
6  customers. Like T-Mobile, AT&T will not produce information about those
7  customers without their consent. AT&T therefore informed Plaintiffs here that it
8  will need customer consent to produce the information sought in this case, just as in
9  *Birchmeier*.

## ARGUMENT

Section 2891 of California's Public Utilities Code contains a "Right of Privacy" for telephone customers. CAL. PUBLIC UTILITIES CODE § 2891. According to § 2891, "[n]o telephone or telegraph corporation shall make [certain categories of information] available to any other person or corporation, without first obtaining the *residential* subscriber's consent, in writing." *Id.* § 2891(a) (emphasis added). Protected information includes (1) the "subscriber's personal calling patterns, including any listing of the telephone or other access numbers called by the subscriber," (2) the "services which the residential subscriber purchases from the corporation," and (3) "[d]emographic information about individual residential subscribers, or aggregate information from which individual identities and characteristics have not been removed." *Id.* § 2891(a)(1), (a)(3), (a)(4). The questions here are (1) whether § 2891 applies to wireless customers and, if it does, (2) whether Plaintiffs have sought protected categories of information.

### I. Recent Decisions Have Applied § 2891 to Wireless Customers.

Plaintiffs argue that § 2891 applies to wireline customers, not wireless customers. (Dkt. # 91 at 5.) This argument relies on § 2891's application to "residential subscriber[s]," an undefined term that Plaintiffs interpret to mean wireline customers. *See* § 2891(a). That interpretation does have precedent. In

*Kamalu v. Walmart Stores*, the defendant sent AT&T a subpoena for the plaintiff's wireless records. 2013 WL 4403903, at *1. The plaintiff argued that § 2891 required her consent. *Id.* at *6. The court rejected that argument, holding that the "records sought here are mobile phone records, not residential records." *Id.* The court reasoned that the Public Utilities Code uses the term "mobile telephony services" in § 2890.2, suggesting that § 2891 would say "mobile telephony subscribers" instead of "residential subscriber[s]" if the Legislature meant to protect wireless customers. *Id.*

But more recent cases, including *Birchmeier*, have rejected *Kamalu* and held that wireless customers are "residential subscriber[s]." *See* Birchmeier Transcript at 6:8-7:4; *Tataryn v. Barnett*, No. 08FL00527, at *3-*4 (Cal. Super. Ct. June 9, 2014) (Ex. 4). The first was *Tataryn v. Barnett*, in which the Superior Court of California rejected *Kamalu* for at least three reasons. First, § 2891 does not define "residential" at all, much less to mean "wireline." *Tataryn*, at *2-*4. Second, the Legislature enacted § 2890.2 in 2002, when cell-phones were common, while it enacted § 2891 in 1986, when cell-phones were uncommon. *Id.* at *3. "So although the court in *Kamalu* assumed that the Legislature knew how to refer to mobile phones and chose not to when it passed section [2891], this is not entirely accurate." *Id.* Third, § 2891's legislative history "suggests that the word 'residential' was intended to differentiate from commercial subscribers, not as between landlines and mobile lines." *Id.* at *4. The court in *Birchmeier* considered these points to be "persuasive" and agreed that § 2891 applies to wireless customers. *See* Birchmeier Transcript at 6:8-7:4 (relying on *Tataryn*). According to the court, "a residential subscriber is a subscriber who has a residence." *Id.* at 6:11-22.

These competing decisions reflect "a substantial ground for differences of opinion, as the law does not appear to be settled with respect to the application of Cal. Pub. Util. Code § 2891 to cellular telephone providers." *See In re Farsheedi*,

1  No. C 09-3888 JF, 2009 WL 4572745, at *2 (N.D. Cal. Dec. 4, 2009). But given
2  the analysis of *Tataryn* and *Birchmeier*—which involved a similar subpoena in a
3  similar class-action—§ 2891 appears to apply both to wireline customers and to
4  wireless customers.

5  **II.  Plaintiffs Seek Protected Information.**

6      If the Court agrees that § 2891 applies to wireless customers, then Plaintiffs
7  have sought protected information. First, Plaintiffs seek "personal calling patterns"
8  in that they seek a list of the Omni telephone numbers that AT&T's customers
9  called, plus the dates, times, durations, and locations of those calls.
10 § 2891(a)(1). While Plaintiffs deny seeking any "personal calling patterns," (Dkt. #
11 91 at 5), § 2891 expressly provides that this term includes "*any* listing of the
12 telephone . . . numbers called by the subscriber," *id.* § 2891(a)(1) (emphasis added).
13 Second, responsive information will reveal the "services" that AT&T's customers
14 have purchased. § 2891(a)(3). That is, Plaintiffs want information about AT&T's
15 wireless customers only—so responsive information will necessarily demonstrate
16 that a particular person has purchased wireless service from AT&T. Third,
17 Plaintiffs seek "demographic information about individual residential subscribers"
18 in that they seek customer names and addresses.
19 § 2891(a)(4).

20     Plaintiffs argue that names and addresses are not "demographic information."
21 (Dkt. # 91 at 5-6.) But the court in *Birchmeier* rejected that same argument. *See*
22 Birchmeier Transcript at 4:15-6:2. As the court explained, § 2891 protects (1)
23 individualized demographic information and (2) aggregated demographic
24 information "from which individual identities and characteristics have not been
25 removed." § 2891(a)(4); Birchmeier Transcript at 5:13-25. Hence, "demographic
26 information" must include identity information; otherwise, aggregated demographic
27 information would not contain "identities" to remove. Birchmeier Transcript at
28 5:13-25.

## **CONCLUSION**

AT&T asks the Court to order that Plaintiffs must have customer consent to require the production of the information sought in their subpoena regarding AT&T's customers.

Dated: April 8, 2015

                                                Respectfully submitted,

                                                AT&T Services, Inc.

                                                By: *[signature]*
                                                       Gleam Davis
                                               Attorney for AT&T Mobility LLC