# EXHIBIT C

```
 1                    IN THE UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3

 4    GRANT BIRCHMEIER, et al.,        )
                                       )
 5                     Plaintiffs,     )   Docket No. 12 C 4069
                                       )
 6               vs.                   )
                                       )
 7    CARIBBEAN CRUISE LINE, INC.,     )   Chicago, Illinois
      et al.,                          )   March 20, 2015
 8                                     )   9:50 a.m.
                       Defendants.     )
 9

10                       TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12    APPEARANCES:

13
      For the Plaintiff:       EDELSON LLC
14                                  BY:  MS. EVE-LYNN J. RAPP
                                    350 North LaSalle Street
15                                  Suite 1300
                                    Chicago, Illinois    60654
16

17
      For the Defendant:       MC GUIRE WOODS, LLP
18                                  BY:  MR. BRIAN P. O'MEARA
                                    77 West Wacker Drive
19                                  Suite 4100
                                    Chicago, Illinois    60601
20

21                             TABET, DI VITO, ROTHSTEIN
                                    BY:  MR. TIMOTHY A. HUDSON
22                                  209 South LaSalle Street
                                    7th Floor
23                                  Chicago, Illinois    60604

24

25
```

```
 1                    PERKINS COIE, LLP
                           BY:  MS. DEBRA R. BERNARD
 2                    131 South Dearborn Street
                      Suite 1700
 3                    Chicago, Illinois    60603

 4
                      ROSE, HARRISON & GILREATH, P.C.
 5                         BY:  MR. M. PEEBLES HARRISON
                      700 Blue Jay Street
 6                    Suite 1
                      Kill Devil Hills, North Carolina    27948
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23         LAURA M. BRENNAN - Official Court Reporter
              219 South Dearborn Street - Room 2102
24                  Chicago, Illinois   60604
                         (312) 435-5785
25
```

```
 1            (The following proceedings were had in open court:)
 2            THE CLERK:  Case number 12 C 4069, Birchmeier v.
 3   Caribbean Cruise Line.
 4            THE COURT:  Starting over there.
 5            MR. HARRISON:  Peebles Harrison for the defendant The
 6   Berkley Group.
 7            MS. BERNARD:  Debra Bernard for nonparty T-Mobile.
 8            MR. HUDSON:  Tim Hudson on behalf of defendants
 9   Caribbean Cruise Line and Vacation Ownership Marketing Tours.
10            MR. O'MEARA:  Good morning, your Honor; Brian
11   O'Meara, also here on behalf of The Berkley Group.
12            MS. RAPP:  Good morning, your Honor; Eve-Lynn Rapp on
13   behalf of the plaintiff and the classes.
14            THE COURT:  Okay.  So is there any objection to the
15   plaintiffs' motion to file an amended consolidated complaint?
16            MR. HUDSON:  No objection to the motion to file the
17   amended consolidated complaint.
18            THE COURT:  Mr. Harrison.
19            MR. HUDSON:  We do have some issues in terms of some
20   discovery we need to conduct.
21            THE COURT: Yes.  That's a separate issue, though.
22            Same for you?
23            MR. HARRISON:  No, sir.  It's just that we can work
24   it out.
25            THE COURT:  I'm assuming you will be able to get that
```

1  worked out.
2  　　　　Motion to file amended consolidated complaint is
3  granted.  That is item number 2E4, Pam.
4  　　　　Okay.  So let's talk about the T-Mobile thing.  I
5  have one question basically, and it's a question for Ms.
6  Bernard because it's an issue about the meaning of something
7  in the statute, the California statute, that is discussed in
8  the reply, and; that is, there is an argument made that, you
9  know, the restriction under the California statute, which is
10 California Public Utilities Code Section 2891(a), gives a list
11 of the kinds of information that a telephone or telegraph
12 corporation cannot make available to anybody else without
13 getting the subscriber's consent, residential subscriber's
14 consent.
15 　　　　<u>Item number 4 is demographic information about</u>
16 <u>individual residential subscribers.  So the argument is made</u>
17 <u>that the name and address is not, quote, "demographic</u>
18 <u>information."</u>
19 　　　　So how do you respond to that?
20 　　　　MS. BERNARD:  Well, first off, your Honor, if you
21 look at 2891(a)(4,) it says:
22 　　　　"Demographic information about individual residential
23 subscribers, or aggregate information from which individual
24 identities and characteristics have not been removed."
25 　　　　THE COURT:  Yes.

```
 1            MS. BERNARD:  So I would interpret that to mean a
 2   demographic that includes --
 3            THE COURT:  It includes identity.
 4            MS. BERNARD:  -- identity.
 5            THE COURT:  Because otherwise, why would you need the
 6   second part of it?
 7            MS. BERNARD:  Exactly.
 8            THE COURT:  That's kind of what I figured she was
 9   going to say, and it's a pretty decent point.
10            So, Ms. Rapp, how do you deal with that?
11            MS. RAPP:  We disagree.  We cited two definitions for
12   the common terms of "demographic."
13            THE COURT:  Yes, but we're not talking about a common
14   term.  We're talking about a term that is used in the statute.
15            And it says:  "Demographic information about
16   individual residential subscribers, or aggregate information
17   from which individual identities and characteristics have not
18   been removed."
19            And to me the second clause in that makes it
20   relatively apparent that what the California legislature was
21   referring to when they meant demographic information included
22   individual identities and not just, you know, calling patterns
23   or, you know, race or ethnicity which, frankly, they wouldn't
24   have anyway.  I mean, they probably wouldn't even have gender
25   information.
```

1  So I don't think that's a good argument on the
2  plaintiffs' side.
3  So let me tell you what I think about the rest of it.
4  I'm trying to go through them in rough sequence here. So,
5  first of all, there is no question that T-Mobile is a
6  telephone corporation. I think that's pretty much settled
7  under the cases that have been given to me.
8  There's an argument by the plaintiff that a mobile
9  phone subscriber is not a, quote, unquote, "residential
10 subscriber." I mean, I don't think that's a viable argument.
11 You know, when legislators use statutes -- write
12 language in statutes, you know, unless there's something else
13 in the statute that gives a clue to some specialized meaning,
14 you would understand that to be an ordinary meaning. And a
15 residential subscriber is a subscriber who has a residence.
16 And the fact that they wrote this before -- maybe wrote this
17 before there were mobile phones doesn't change the meaning of
18 it, I don't think. And if it did, you know, every time a new
19 technology came along, we would have to go back and rewrite
20 every statute. You know, some of them do have to be rewritten
21 if there is language that doesn't apply to the new technology,
22 but I think this one does.
23 The defendant, or not the defendant --
24 T-Mobile cited an opinion by a superior court judge
25 in Sacramento in a case called Tataryn, T-a-t-a-r-y-n, v.

1  Barnett that I thought was pretty persuasive on that
2  particular point.  So this is the type of information that,
3  under the statute, under Section 2891(a), would require
4  written consent by the residential subscriber.  The plaintiff
5  also argues that another section of the statute,
6  Section 2894(a), basically permits an exception to that if
7  there is a court order.
8        2894(a) says, notwithstanding Section E of 28 --
9  excuse me -- subdivision E of Section 2891, which is the part
10 of 2891 that talks about what happens if you violate 2891,
11 quote:
12        "The disclosure of any information by an inter-
13 exchange telephone corporation, a local exchange telephone
14 corporation, or a provider of commercial mobile radio service,
15 as defined in Section 216.8, in good faith compliance with the
16 terms of a state or federal court warrant or order or
17 administrative subpoena issued at the request of a law
18 enforcement official or other federal, state or local
19 governmental agency for law enforcement purposes, is a
20 complete defense against any civil action"...
21        That's not what we're talking about here.  And I
22 understand that there have been a couple of judges in cases
23 that, in my view, have sort of blown past that language.  This
24 is not a court order that is issued at the request of a law
25 enforcement official.  It's a private lawsuit.  There is

1  similar language in a federal statute, which I think is the
2  Electronic Communications Act, which is interpreted not to
3  apply to, you know, court orders from judges in civil cases.
4       Basically the purpose of this is to make sure that
5  the phone company can respond to a subpoena in a criminal case
6  is what it amounts to, or maybe some administrative proceeding
7  involving the government.  So that exception does not apply.
8       I agree that the fact that there is a federal
9  procedural rule that permits service of subpoenas doesn't
10 trump this.
11      The plaintiff also cited a California supreme court
12 case called Pioneer Electronics v. Superior Court, 40 Cal.4th,
13 360, 2007, that talked about not a statute but, rather, the
14 California constitution's right to a privacy provision and
15 applied a balancing test and said that even if you have a
16 right to privacy, that name and address information can be
17 disclosed in a consumer rights class action.  And, obviously,
18 that is California law, and I don't have any quarrel with it.
19      But they were talking about a constitutional
20 provision that has general terms.  You have a right to
21 privacy.  This is a statute.  It's very particular, and I just
22 don't see how the same balancing test would apply here.  So I
23 think T-Mobile has got the better of this argument.
24      I don't know if there is a work-around.  The motion
25 is called a motion for an order compelling T-Mobile U.S. to

```
 1   produce California subscriber information.  That's denied.
 2           I don't know if there is a work-around here.  I don't
 3   know whether it's doable to enlist essentially, or maybe the
 4   better word would be conscript T-Mobile to send out notices to
 5   its California customers.  You know, you might want to think
 6   about whether there is some kind of a work-around along those
 7   lines which wouldn't require to them to disclose them; it
 8   would just require them to send out a notice.
 9           MS. RAPP:  Your Honor, we put that in a footnote in
10   the reply brief that, you know --
11           THE COURT:  So stop right there.  Footnote in a reply
12   brief.
13           MS. RAPP:  We didn't come up with the idea until we
14   were drafting the reply.  Admittedly, it probably should have
15   been in the body of the reply, but it's essentially saying the
16   exact same thing, that T-Mobile can perhaps send out the
17   notice.
18           THE COURT:  Well, but what I think you ought to do is
19   I think you ought to talk about that first and then if you
20   have got --
21           And we need to kind of try to start bringing this
22   whole thing to a close here, but I think you ought to talk
23   about it first.  And if you can't come up with something, you
24   know, you can come back to me with another motion, I think.
25   But I don't think it would be appropriate for me to just sort
```

| | |
|---|---|
| 1 | of wing it based on a footnote in a reply brief. |
| 2 | So I don't think you forfeited the issue. I just |
| 3 | think it should be something that you talk about first. |
| 4 | MS. BERNARD: And we're happy to have that |
| 5 | discussion, your Honor. |
| 6 | MS. RAPP: As are we. |
| 7 | THE COURT: That's the only thing I can think of. I |
| 8 | mean, there may be other ideas that a more creative person |
| 9 | could come up with, but I'm just going to leave that to you to |
| 10 | try to discuss; otherwise these 12,000 people are basically |
| 11 | going to be kind of outside the class. |
| 12 | MS. BERNARD: Only 4,600. |
| 13 | MS. RAPP: 4,600. |
| 14 | THE COURT: Yes, whatever it is, 4,600, you know, |
| 15 | whatever. |
| 16 | MS. RAPP: They also have the -- |
| 17 | They can, you know, receive notice through the media, |
| 18 | part of the notice plan. |
| 19 | THE COURT: That's true. So maybe they won't be |
| 20 | outside the class. Maybe they just don't get as direct a |
| 21 | notice. |
| 22 | MS. RAPP: That's exactly what's happening. I mean, |
| 23 | that's -- |
| 24 | THE COURT: So maybe the deal is that the publication |
| 25 | notice ends up being the best notice practical, quote, |

1  unquote, under the circumstances. But I think you should -- I
2  think you should try to see if there is a work-around first
3  because I do think individual notice is preferable if it's
4  doable. If it's doable, we can do it. If it's not doable,
5  then, you know, plan B.
6           MS. RAPP: Understood.
7           THE COURT: As far as the rest of it is concerned, I
8  looked at the status report. It didn't look like there was
9  anything else for me to decide at this point.
10          MR. O'MEARA: Your Honor, we do have --
11          We would like to address with you briefly the next
12 steps in connection with the amended complaint that was filed.
13 We already have had a discussion with plaintiffs' counsel.
14 We're able to reach agreement.
15          THE COURT: There is one question I want to interject
16 on that. So do I need --
17          Is the new person being --
18          The new plaintiff, you have got a new plaintiff,
19 right?
20          MS. RAPP: Yes.
21          THE COURT: Is that person proposed to be a class
22 rep?
23          MS. RAPP: Yes.
24          THE COURT: So do I have to do something along
25 those --

```
 1              I mean, obviously, you're going to have to take --
 2              Is it a he or she?
 3         MS. RAPP:  It's a he.
 4         THE COURT:  You're going to have to take his
 5   deposition to find out if there's any issues.  But ultimately
 6   I would have to, quote, unquote, appoint him as a class rep,
 7   right?
 8         MS. RAPP:  That's correct.
 9         THE COURT:  Go ahead, Mr. Hudson.
10         MR. HUDSON:  So, your Honor, we have discussed a
11   number of issues.  Yesterday in a telephone call, we were able
12   to reach an agreement on a number of issues, and there is one
13   issue that I think we need to -- we really need to raise with
14   you now.
15         First, the parties agreed that we would have until
16   April 15th.  We would actually like that to be the 17th for
17   the defendants to answer or otherwise respond --
18         THE COURT:  That's fine.
19         MR. HUDSON:  -- to the complaint.
20         THE COURT:  The defendants have until April 17th to
21   respond.
22         MR. HUDSON:  The second issue is one of discovery.
23   The plaintiffs had indicated that they have no new discovery
24   to take, for obvious reasons.  We intend to take full
25   discovery of the newly named plaintiffs.
```

1       THE COURT: Right.

2       MR. HUDSON: And we also intend to take discovery,
3   limited narrow discovery, on the existing plaintiffs with
4   respect to the new allegations that were included in the
5   amended complaint concerning the theory of liability, which is
6   now a joint venture and partnership issue. So we discussed
7   with --

8       THE COURT: You actually think they're going to know
9   anything about that?

10      MR. HUDSON: Pardon me?

11      THE COURT: You actually think they're going to know
12  anything about that? Legal theories usually come from
13  lawyers.

14      MR. HUDSON: No. I understand, your Honor. But I do
15  think that we can get some specific information, especially
16  considering that they're claiming that the basis for these new
17  allegations is to conform the pleadings to the evidence.

18      THE COURT: You know, you guys are going to work this
19  out, and if you don't, you will get it in front of me in some
20  way.

21      But, you know, personally, as a decision-maker, I
22  have never --

23      So I will give you sort of a rough analogy. It's not
24  a great one, but it's what I come up with on short notice. So
25  in employment discrimination cases, it's common for the

| | |
|---|---|
| 1 | defendant's lawyer to ask the plaintiff in the deposition: |
| 2 | Well, what makes you think that my client discriminated |
| 3 | against you based on race? And the plaintiff basically comes |
| 4 | up with an answer which doesn't include much information. |
| 5 |     Then this gets bold print, highlighted, triple |
| 6 | underlined three times, you know, 16.-type in the summary |
| 7 | judgment briefs that the plaintiff has no basis to sue. Well, |
| 8 | of course not. That's what lawyers are for. |
| 9 |     So if that's where it's going, I mean, put that in |
| 10 | the footnote in the reply brief. |
| 11 |     MR. HUDSON: No, I understand, your Honor. |
| 12 |     And plaintiffs' counsel agrees that the sort of |
| 13 | limited narrow, what essentially I think are going to be |
| 14 | contention interrogatories, is something that they have agreed |
| 15 | to. The question is the number per party. |
| 16 |     THE COURT: What are we talking about? |
| 17 |     MR. HUDSON: We said 10 per defendant. |
| 18 |     THE COURT: How many? |
| 19 |     MS. RAPP: Per plaintiff. |
| 20 |     MR. HUDSON: Ten per defendant. There are three |
| 21 | defendants although, although, we're not contemplating 30 |
| 22 | interrogatories, your Honor. And, in fact -- |
| 23 |     THE COURT: So hang on a second. So it would be 30 |
| 24 | per defendant for each of the four plaintiffs, a total of 120? |
| 25 |     MR. HUDSON: No. |

| | |
|---|---|
| 1 | THE COURT: Okay. |
| 2 | MR. HUDSON: The interrogatories served on the |
| 3 | plaintiffs would be identical interrogatories. So, first, |
| 4 | they would be identical for all of the plaintiffs is our |
| 5 | expectation. And because they're limited to this sort of |
| 6 | narrow issue of partnership or joint venture, there is |
| 7 | certainly a community of interest between -- among the three |
| 8 | defendants. |
| 9 | THE COURT: Can I short-circuit this? |
| 10 | Look, you have got to do this the way you normally do |
| 11 | it. So, first of all, there is an amended complaint filed |
| 12 | that has new stuff in it. So, you know, at least |
| 13 | presumptively you're entitled to take some discovery. |
| 14 | Okay. Then the question is going to be what and when |
| 15 | and how much, okay. So the way you do that is you just serve |
| 16 | it or either try to work it out in advance. If you can't work |
| 17 | it out in advance, you serve it. Somebody objects to it. If |
| 18 | you can't work out the objection, somebody comes in on a |
| 19 | motion to me, and I rule on it then when I actually have |
| 20 | something concrete. |
| 21 | MR. HUDSON: Understood. Done. That's exactly what |
| 22 | we'll do. |
| 23 | So in terms of a discovery cutoff date? |
| 24 | THE COURT: Suggest something. |
| 25 | MR. HUDSON: July 1. |

```
 1        MS. RAPP:  We think that is probably longer, but
 2   we're fine with it.
 3        THE COURT:  Discovery on the amended complaint or
 4   whatever we're calling it, amended consolidated complaint, is
 5   to be completed by July 1, which is -- yes, it's a weekday.
 6        I want to see you back in a month.  So can you come
 7   in on the --
 8        Let me make sure this date is okay.  Can you come in
 9   on the 27th of April at 9:30?  It's a Monday.
10        MS. RAPP:  It sounds fine for me.
11        THE COURT:  Does that pose particular problems for
12   you, Mr. Harrison?
13        MR. HARRISON:  I don't believe so, your Honor.
14        THE COURT:  It should be okay?
15        MR. HARRISON:  Yes.
16        THE COURT:  Because I know you're coming from out of
17   town.
18        All right, see you then.
19        MS. RAPP:  Thank you, your Honor.
20        MR. HARRISON:  Thank you.
21        MR. HUDSON:  Have a nice weekend, Judge.
22        THE COURT:  You, too.
23
24     (Which were all the proceedings had in the above-entitled
25   cause on the day and date aforesaid.)
```

Case 2:13-cv-02468-CAS-AGR Document 111-3 Filed 04/08/15 Page 18 of 19 Page ID #:3632

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

38

EXHIBIT C
Page 17 of 18

1
2           C E R T I F I C A T E
3      I hereby certify that the foregoing is a true and
4  correct transcript of the above-entitled matter.
5
6
7  /s/ Laura M. Brennan                March 23, 2015
8
9  _____      _____
   Laura M. Brennan
10 Official Court Reporter                    Date
   Northern District of Illinois
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25